## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, THE MARKETING ARM, INC, and AUGUST PASK PARTNERS LLC d/b/a HUDSON EDITORIAL, <br><br> Defendants. | **Civil Action No.** <br><br> **COMPLAINT** <br><br> **JURY TRIAL REQUESTED** |

Plaintiff Atari Interactive, Inc. ("Atari") files this Complaint against State Farm Mutual Automobile Insurance Company ("State Farm"), The Marketing Arm, Inc. ("TMA"), and August Pask Partners LLC d/b/a Hudson Editorial ("Hudson Edit") (collectively, "Defendants"), and, in support, states as follows:

## INTRODUCTION

1.      Plaintiff Atari brings this action to protect its intellectual property rights from infringement by Defendants State Farm, TMA, and Hudson Edit.  Defendants have unlawfully infringed Atari's intellectual property rights and disparaged Atari's reputation and goodwill by creating and disseminating video advertisements that infringe Atari's intellectual property rights, including Atari's copyright works associated with its Crystal Castles video game, as part of Defendants' nationwide "Gamerhood" advertising campaign.

2.      Atari owns exclusive rights to copyright works associated with Crystal Castles in

1

the United States and elsewhere. Those works include the Crystal Castles cabinet "wrap," the underlying software and cassette tapes associated with the Crystal Castles game, and the artistic depictions of the characters therein (such as Bentley Bear). U.S. Copyright Office Registration Nos. VA 0-162-740 (Audiovisual work of Crystal Castles); PA 0-185-123 (Video Game Software); TX 3-580-532 (Computer Files). The registrations are valid, subsisting, and in full force and effect. True and correct copies of federal copyright registration certificates are attached as **Exhibit 1.**

3.     Defendants' Gamerhood advertising campaign traded on Atari's intellectual property rights by unlawfully associating Atari's iconic intellectual property and cultural relevance with State Farm's insurance business. State Farm admitted that the purpose of its Gamerhood campaign and unlawful use of Atari's intellectual property was part of a cynical plot designed to "resonate with and educate the fickle target market (Millennials and Gen Z) about insurance in an innovative way they would embrace and find entertaining" and "g[i]ve State Farm a powerful introduction to their future consumer base and increased brand affinity."[1]

4.     Worse, Defendants' unlawful use of Atari's intellectual property cast Atari in a false and disparaging light as the video advertisements depicted Atari's Crystal Castles cabinet as being faulty, unreliable, and of a poor quality.

5.     As part of the Gamerhood campaign, Defendant's infringing video advertisements were disseminated online and via social media, garnering millions of views and billions of online consumer impressions. While the campaign may have been a boon to State Farm's insurance business and bottom line, Defendants' disparaging portrayal of Atari's intellectual property came

---

[1] https://shortyawards.com/15th/state-farm-gamerhood-challenge

at the reputational expense of Atari whose reputation, goodwill, and high-quality control standards suffered damage in the eyes of consumers.

6.      Consumers, clearly recognizing the use of Atari's intellectual property in Defendants' video advertisements, took to popular message boards and social media to voice their displeasure and negative reactions to State Farm's misappropriation of Atari's works and its cynical use of gamer culture to sell insurance products.

7.      Stated plainly, State Farm has used Atari's iconic intellectual property to approximate proximity to Atari's cultural relevance to grow its insurance business with gamers and younger demographics familiar with Atari - without properly compensating Atari for the use of its intellectual property.

8.      Defendants never requested, much less received, Atari's permission, authorization, or license to use Atari's intellectual property.

9.      Atari brings this action to recover the damages it has suffered as a result of Defendants' unlawful infringement of its intellectual property rights as well as disgorgement of the profits and corresponding financial gain received by Defendants as a result of their unlawful activity.

10.      Defendants' unlawful conduct cannot persist without consequence.

## THE PARTIES

11.      Plaintiff Atari is a Delaware corporation with its principal place of business in New York, New York.

12.      Defendant State Farm Mutual Automobile Insurance Company is an Illinois corporation with its principal place of business in Bloomington, Illinois.  State Farm is an insurance

3

company registered to do business and doing business in the State of Texas with its registered agent for service of process: Corporation Service Company, at 211 East 7th Street, Suite 620, Austin, Texas 78701.

13.    Defendant The Marketing Arm, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas.  TMA is registered to do business and doing business in the State of Texas with its registered agent for service of process: Corporation Service Company, at 211 East 7th Street, Suite 620, Austin, Texas 78701.

14.    Defendant August Pask Partners LLC d/b/a Hudson Editorial is a Michigan limited liability company with its principal place of business in Bloomfield Hills, Michigan.

15.    At all relevant times hereto, State Farm, TMA, and Hudson Edit acted jointly and as agents of each other such that the conduct of each defendant may be imputed to each other defendant and vice versa.

## JURISDICTION AND VENUE

16.    This Court has federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the federal Copyright Act.  Jurisdiction over the state law claims is also appropriate under 28 U.S.C. § 1367(a) and principles of pendent jurisdiction because those claims are substantially related to the federal claims.

17.    Venue is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(a) because, on information and belief, Defendants conduct business in this District, reside and/or may be found in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District and has caused damage to Atari in this District.

18.    Personal jurisdiction exists over Defendants because Defendants regularly

conduct, transact and/or solicit business in Texas and in this District, purposefully direct advertising, including the infringing advertisements at issue, and solicit business from consumers in Texas, supply their goods and services to consumers in Texas and in this District, maintain offices and registered agents for service of process in Texas and in this District, derive substantial revenue from their business transactions in Texas and in this District, and/or otherwise avail themselves of the privileges and protections of the laws of Texas, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

## **FACTUAL ALLEGATIONS**

I.      **Atari's Iconic Intellectual Property Portfolio and Products**

19.     Atari's intellectual property portfolio subsists in relation to a dynamic collection of vintage gaming software, arcade games, accessories, apparel, and other merchandise.  Created in 1972, the Atari brand quickly became a dominant force in the video game and arcade industry through the groundbreaking developments and legendary game releases made under its brand by Atari's predecessor company, Atari Inc.  Atari and its successors have pushed the boundaries of game design, captivating wide audiences with its arcade games, such as Pong and Crystal Castles, and its home video consoles, such as the Atari 2600 console.

20.     Years of promotion and consistently strong sales performance garnered Atari global brand recognition.  For example, Atari's famous logo, often referred to as the "Fuji" logo, is recognized worldwide, even to those outside the gaming world.

21.     Atari is the registered owner of a vast number of federal copyright registrations, duly and legally issued by the United States Copyright Office, including those set out at paragraph 2 above.  *See* **Exhibit 1**.

22. Specifically, photographs of the Crystal Castles cabinet "wrap" and exemplary artistic depictions of Bentley Bear are attached as **Exhibit 2** and set forth below:



23. Atari has an active licensing business through which Atari has extended its brand into other media, advertising, merchandising, and publishing categories.

6

24.     Atari has followed a defined strategy for positioning, marketing, advertising, and promoting its brand in the industry and to consumers and establishing distribution channels. Atari's promotional, marketing, and advertising efforts include, for example, the atari.com website, online advertising, social media advertising campaigns, and participation in annual game conventions.

25.     Atari approves and maintains quality control over all promotional, marketing, and advertising materials and makes systemic efforts to safeguard the quality and integrity of the Atari brand and its associated intellectual property, including the Crystal Castles works at issue here. Atari has also expended substantial time, money, and other resources in advertising and otherwise promoting the Atari brand and its associated intellectual property, including the Crystal Castles works at issue here.  As a result, the Atari brand and its associated intellectual property, including the Crystal Castles works at issue here, are widely recognized and exclusively associated by consumers, the public, and businesses as being authorized from Atari.

II.     **Defendants' Widespread Infringement Atari's Crystal Castles Copyrights**

26.     Founded in 1922, State Farm is the largest property and casualty insurance provider, and the largest auto insurance provider, in the United States.  In 2022, State Farm was ranked 42nd in the Fortune 500, with total assets of approximately $300 billion.

27.     State Farm relies heavily on advertising, marketing, and promotional campaigns in order to secure customers and grow its revenue and market share as a leading insurer.  Examples include the State Farm jingle ("Like a good neighbor, State Farm is there") and the "Jake from State Farm" character. State Farm knows the valuable role that dynamic advertising campaigns play in acquiring new customers and generating business revenue.

28.     TMA is a global marketing and advertising agency that specializes in digital and

social media and content creation and production on behalf of brands, including State Farm. Hudson Edit is a multi-media production company that in connection with State Farm and TMA created the infringing advertisements at issue.

29.     Upon information and belief, Defendants collaborated, assisted, and acted as agents of each other with respect to the formulation of the Gamerhood campaign at issue, as well as the creation and production of the infringing advertisement videos containing Atari's intellectual property used as part of the Gamerhood campaign.

30.     Defendants, without license or authorization, created and posted at least three infringing videos to, upon information, official State Farm social media accounts: (1) *@StateFarm* on X (f/k/a Twitter); *u/StateFarmOfficial* on Reddit; and (3) State Farm Insurance on YouTube:



31.     Atari's Crystal Castles intellectual property is featured prominently in the infringing video advertisements.  The center of nearly every video frame prominently features the Crystal Castles arcade cabinet, with Crystal Castle's characters and scenes showcased across the front and side of the six-foot tall cabinet.  The willful and/or recklessness of Defendants' infringing conduct is demonstrated by Defendants' intentional, yet careless and haphazard efforts to conceal their infringement by replacing the words "Crystal Castles" with "Witch's Broom" on the top of the cabinet.  As discussed in paragraph 39 below, Defendants' attempt to conceal their intentional infringement was readily apparent to Atari's discerning fans and customers.

32.     Defendants' infringing videos also placed Atari and its works in a bad light, including when the "Jake from State Farm" character hits the front of the cabinet—right on Atari IP—suggesting falsely and disparagingly to consumers that Atari's cabinets are low-quality, faulty, and/or unreliable.

33.     Defendants knew what they were doing.  State Farm misappropriated Atari's iconic intellectual property for its own commercial ends. While they made a half-hearted attempt to cover the mark and name Crystal Castles that appears at the top of the cabinet, they did not obscure any of the other Atari intellectual property that covers the cabinet. That's because Defendants wanted realism to show gamers that a big insurance company (State Farm) understands them and was relatable, i.e., State Farm wanted to take the cultural benefits of Atari's IP without paying for it.

34.     Defendants' unlawful actions and non-compliant conduct had their intended consequences.  Through social media posts and advertisements, consumers clearly recognized that Defendants were misappropriating and infringing on Atari's intellectual property.

35.     For example, a series of X/Twitter and Reddit discussions document reactions to the Gamerhood campaign, and specifically Atari's Crystal Castles' role in it.  The consumers who

started these discussions had negative reactions to Defendants' misappropriation of Atari's works and their cynical use of gamer culture to sell insurance products. Consumers also expressed negative reactions to the perception that a cultural icon like Atari was commercially associated with an insurance conglomerate like State Farm.

36.     Defendants' infringement of Atari's intellectual property at the expense of Atari's reputation and customer goodwill, and without any compensation to Atari, was apparently profitable for Defendants. State Farm stated that the reaction to its brand was "100% positive" and "revolutionary" "by every metric."[2]

37.     Not so for Atari. A non-exhaustive sampling of negative consumer reactions to Defendants' misappropriation and infringement of Atari's IP and State Farm's false commercial association with Atari in the subject video advertisements include:

- "There is so much wrong with what I just witnessed here."

- "Does it really bother anyone else that It's a Crystal Castles machine that has had its marquee and screen changed?"

- "Me seeing the Crystal Castles machine. [Meme Image Text: Look how they massacred my boy.]"

- "I recognize the machine [Jake from State Farm] hit. That's a crystal castles machine."

- "Unbelievably out of touch."

- "Why ruin a perfectly good crystal castles cabinet for a f*cking insurance commercial? And not even one of the good ones!"

- "You think a bastardized Crystal Castles cabinet is going to make you seem cool to gamers? Think again."

38.     Defendants' infringement and unauthorized use of Atari's intellectual property has

---

[2] https://shortyawards.com/15th/state-farm-gamerhood-challenge

deprived Atari of its exclusivity of those rights, damaged Atari's brand, reputation, and goodwill, and unjustly enriched Defendants.  As a direct result of the conduct of Defendants, Atari has suffered and continues to suffer damages in an amount to be determined.  In the alternative, Atari has no adequate remedy at law.

39.    Defendants have committed all of the aforesaid acts deliberately, willfully, maliciously and oppressively, without regard to Atari's intellectual property rights.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*)**

40.    Atari repeats and incorporates by reference its allegations contained in paragraphs 1–39 of this Complaint.

41.    Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted work in copies, to prepare derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, license, or lending.

42.    Atari has never authorized any of the Defendants, by license or otherwise, to copy, reproduce, distribute, or display any of the Crystal Castles copyrighted material, nor to prepare derivative works based on the Crystal Castles copyrighted material.

43.    Defendants infringed Atari's exclusive rights in the Crystal Castles copyrighted material by copying, reproducing, duplicating, distributing, and displaying it and/or derivative works derived therefrom without Atari's permission, authorization, or license.

44.    Each infringing copy, duplication, sale, license, or display of the Crystal Castles copyrighted material, as well as the threat of continuing the same, constitutes a separate claim

against Defendants under the Copyright Act.  Atari has sustained, and will continue to sustain, substantial damage to the value of its copyrights in that the previously described activities of Defendants have diminished and will continue to diminish the revenues that Atari would otherwise receive.  In addition, Defendants have realized unlawful and unjust profits from their unauthorized and illegal copying, duplication, distribution, and display of copies of the Crystal Castles copyrighted material.

45.    Defendants are directly liable for the actions described above.

46.    Alternatively, Defendants, as agents of each other, are vicariously and/or contributorily liable for the actions described above.

47.    As a result of the above-described conduct by Defendants, Atari has been damaged in an amount to be proven at trial.

48.    By reason of Defendants' copyright infringement described above, Atari is entitled to recover Defendants' profits to the extent the same are not included as part of Atari's damages.

49.    In the alternative, at the election of Atari, Atari is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT

50.    Atari repeats and incorporates by reference its allegations contained in paragraphs 1–39 of this Complaint.

51.    Atari conferred a benefit on Defendants by virtue of the creation of its goodwill and valuable intellectual property rights, which Defendants have used for commercial gain and to gain an undue advantage.

52.     Defendants took an undue advantage by trading on Atari's goodwill and infringing on Atari's iconic intellectual property without paying Atari the fair or reasonable value of its goodwill and intellectual property rights, Defendants have realized these benefits at Atari's expense.

53.     Defendants were not justified in failing to pay Atari for their use of Atari's goodwill and intellectual property.

54.     Defendants conduct amounted in a windfall to Defendants, at the expense of Atari, because Defendants knowingly and voluntarily retained the benefits of Atari's goodwill and intellectual property and used such benefits to grow their customer base, revenue, and profits, without paying Atari.

55.     It would be inequitable to allow Defendants to retain such benefits without compensating Atari.

56.     Atari has no remedy other than this lawsuit to recover for Defendants' unjust enrichment at its expense.

57.     Defendants are therefore liable to Atari for damages including disgorgement of their unjust enrichment and ill-gotten profits.

### THIRD CAUSE OF ACTION
### BUSINESS DISPARAGEMENT

58.     Atari repeats and incorporates by reference its allegations contained in paragraphs 1–39 of this Complaint.

59.     Defendants intentionally published untrue, false, and/or disparaging statements and depictions to third parties that placed Atari, its business, and its products, including its Crystal Castles cabinets, in a false and disparaging light with the expectation that those statements and

depictions would cause Atari to suffer pecuniary loss.

60.     Defendants' publications contained false and disparaging statements concerning Atari's property, products, and business, to the effect that Atari's products were faulty and of poor quality and workmanship.

61.     Defendants made these false and disparaging claims concerning Atari intentionally, with malice, and/or with reckless disregard for the falsity of such statements.

62.     As a result of Defendants' false and disparaging claims, Atari suffered damages including, but not limited to, lost profits and lost revenues, lost customers, and loss of business, goodwill, and reputation among existing and prospective customers, including as alleged in paragraph 39 of the Complaint.

## FOURTH CAUSE OF ACTION
## UNFAIR COMPETITION

63.     Atari repeats and incorporates by reference its allegations contained in paragraphs 1–39 of this Complaint.

64.     Defendants intentionally published untrue, false, and/or disparaging statements and depictions to third parties that placed Atari, its business, and its products, including its Crystal Castles cabinets, in a false and disparaging light.

65.     Defendants' publications contained false and disparaging statements concerning Atari's property, products, and business, to the effect that Atari's products were faulty and of poor quality and workmanship.

66.     Defendants made these false and disparaging claims concerning Atari intentionally, with malice, and/or with reckless disregard for the falsity of such statements.

67.     As a result of Defendants' false and disparaging claims, Atari suffered damages

including, but not limited to, lost profits and lost revenues, lost customers, and loss of business, goodwill, and reputation among existing and prospective customers, including as alleged in paragraph 39 of the Complaint.

**FIFTH CAUSE OF ACTION**
**FALSE INFORMATION AND ADVERTISING (STATE FARM)**

68.     Atari repeats and incorporates by reference its allegations contained in paragraphs 1–39 of this Complaint.

69.     State Farm is an insurer licensed to do business and is in fact doing business in the State of Texas.   State Farm engaged in an advertising campaign wherein it made false and misleading representations concerning its association with Atari in order to grow State Farm's insurance business.

70.     State Farm intentionally published untrue, false, and/or disparaging statements and advertisements to third parties that placed Atari, its business, and its products, including its Crystal Castles cabinets, in a false and disparaging light, and misled consumers into believing that Atari sponsored or was affiliated with State Farm's advertising campaign in order to grow State Farm's insurance business.

71.     State Farm's advertisements contained false, misleading, and disparaging statements concerning Atari's property, products, and business, to the effect that Atari's products were faulty and of poor quality and workmanship, and that Atari was associated with State Farm's advertising campaign in order to grow State Farm's insurance business.

72.     State Farm's conduct amounts to an unfair method of competition or an unfair or deceptive act or practice in the business of insurance and constitutes a violation of Tex. Ins. Code § 541.052.

73.     As a result of State Farm's unfair competition and deceptive acts and practices in the business of insurance, Atari suffered damages recoverable under Tex. Ins. Code § 541.151 including, but not limited to, lost profits and lost revenues, lost customers, and loss of business, goodwill, and reputation among existing and prospective customers, including as alleged in paragraph 39 of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Atari prays for judgment against Defendants as follows:

74.     That Defendants account for and pay Plaintiff's actual damages and any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

75.     That Defendants account for and pay Plaintiff's actual damages and any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, in an amount to be determined at trial for copyright infringement under 17 U.S.C. § 501(a);

76.     In the alternative, that Plaintiff be awarded statutory damages of not less than $750 and not more than $30,000 for each and every infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement;

77.     That Plaintiff be awarded its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

78.     Entry of an Order that requires Defendants to take the following actions: take all steps necessary to ensure that Defendants disable and cease displaying any infringing advertisements used by or associated with Defendants; take all steps necessary to prevent links to any infringing advertisements from displaying in search results, including, but not limited to,

removing links to any infringing advertisements in any search index;

79.     Award Atari its attorney's fees and costs as allowable by law; and

80.     Award any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: March 22, 2024                          Respectfully submitted,

**PARDELL, KRUZYK & GIRIBALDO, PLLC**

By: /s/*Bryan Giribaldo*
Bryan A. Giribaldo
Texas Bar No. 24124547
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tel: (561) 726-8444
bgiribaldo@pkglegal.com

**BOIES SCHILLER FLEXNER LLP**

By: /s/*Laselve E. Harrison*
James W. Lee
(*pro hac vice* forthcoming)
Laselve E. Harrison
(*pro hac vice* forthcoming)
100 SE 2nd St., Suite 2800
Miami, FL 33131
Tel: (305) 359-8400
Fax: (305) 539-1307
jwlee@bsfllp.com
lharrison@bsfllp.com

Katie Kavanaugh
(*pro hac vice* forthcoming)
2029 Century Park East, 1520N
Los Angeles, CA 90067
Tel: (213) 629-9040
kkavanaugh@bsfllp.com

*Attorneys for Atari Interactive, Inc.*

17

## <u>CERTIFCATE OF COMPLIANCE WITH LOCAL RULE 83.10</u>

In light of Local Rule 83.10(a), the undersigned, Bryan A. Giribaldo, Esq., certifies that he *resides* in Dallas, Texas and that his residence is located within 50 miles of the courthouse for the Dallas Division of the Northern District of Texas.

Date: March 22, 2024                     */s/ Bryan A. Giribaldo*
                                                        Bryan A. Giribaldo