UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., <br><br>                          **Plaintiff,** <br><br>      **v.** <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *et al.*, <br><br>                        **Defendants.** | Case No. 3:24-cv-00704-D |

**BRIEF IN SUPPORT OF DEFENDANTS STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, THE MARKETING ARM, INC., AND AUGUST PASK PARTNERS LLC d/b/a HUDSON EDITORIAL'S MOTION TO DISMISS COMPLAINT**

**<u>TABLE OF CONTENTS</u>**

Page

I.      INTRODUCTION ............................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................2

    **A.**     State Farm, the Campaign, and the Video. ............................................2

    **B.**     Atari's Allegations. ................................................................................3

III.    LEGAL STANDARD....................................................................................4

IV.     ARGUMENT ................................................................................................5

    **A.**     The Copyright Act Claim Fails...............................................................5

        1.      The Complaint Fails to Plausibly Allege Infringement of Atari's Crystal Castles Copyrights...........................................................5

        2.      The Copyright Claim Fails Under the *De Minimis* Use Doctrine...............6

        3.      The Copyright Claim as to Registration No. VA 0 162-740 Fails Under the Fair Use Doctrine. ........................................................9

            a.      The Purpose and Character of the Use......................... 10

            b.      The Nature of the Copyrighted Work. ......................... 12

            c.      The Amount and Substantiality of the Portion Used. ................... 12

            d.      The Effect on the Market for Atari's Copyright. ......................... 13

    **B.**     Atari Fails to State a Claim for Unjust Enrichment...............................15

    **C.**     Atari Fails to State a Claim for Business Disparagement.....................16

    **D.**     Atari Fails to State a Claim for Unfair Competition..............................20

    **E.**     Atari Fails to State a Claim for False Information and Advertising. ....................21

V.      CONCLUSION...............................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*AHBP v. Lynd*,
    649 F. Supp. 3d 371 (W.D. Tex. 2023)....................................................................20

*Andy Warhol Found. for the Visual Arts v. Goldsmith*,
    598 U.S. 508 (2023)...............................................................................................10, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................4, 5, 6, 12

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
    27 F.4th 313 (5th Cir. 2022) ................................................................ *passim*

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)........................................................................................12

*Brown v. Netflix*,
    855 F. App'x 61 (2d Cir. 2021) ..................................................................................10

*Compaq Computer Corp. v. Ergonome Inc.*,
    387 F.3d 403 (5th Cir. 2004) ....................................................................................5, 6

*Encompass Off. Sols. v. Ingenix*,
    775 F. Supp. 2d 938 (E.D. Tex. 2011)........................................................................20

*Gayle v. Home Box Off., Inc.*,
    2018 WL 2059657 (S.D.N.Y. May 1, 2018) ...............................................................8

*Google LLC v. Oracle Am., Inc.*,
    593 U.S. 1 (2021).......................................................................................9, 10, 11, 14

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008)......................................................................6, 7, 9

*Grand Time v. Watch Factory*,
    2010 WL 92319 (N.D. Tex. Jan. 6, 2010) .................................................................21

*Greathouse v. Capital Plus Fin. LLC*,
    2023 WL 5759250 (N.D. Tex. 2023).........................................................................16

*Kelley v. Morning Bee*,
　　2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023)...........................................................7, 8, 9, 12

*Leibovitz v. Paramount Pictures Corp.*,
　　137 F.3d 109 (2d Cir. 1998)...........................................................................................15

*LMNOPI v. XYZ Films, LLC*,
　　449 F. Supp. 3d 86 (E.D.N.Y. 2020) .............................................................................7, 8

*Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*,
　　2021 WL 3492339 (N.D. Tex. Aug. 9, 2021)...................................................................15

*Marano v. Metro. Museum of Art*,
　　844 F. App'x 436 (2d Cir. 2021) ....................................................................................10

*Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*,
　　2021 WL 3618113 (N.D. Tex. Aug. 16, 2021).................................................................20

*Nourse v. Caffey*,
　　2014 WL 2039053 (N.D. Tex. May 16, 2014) ...................................................................5

*Straus v. DVC Worldwide, Inc.*,
　　484 F. Supp. 2d 620 (S.D. Tex. 2007) ..............................................................................6

*Taylor v. Trevino*,
　　569 F. Supp. 3d 414 (N.D. Tex. 2021) ............................................................................16

*Teel v. Deloitte & Touche*,
　　2015 WL 9478187 (N.D. Tex. Dec. 29, 2015) .................................................................20

*Versata Software, Inc. v. Infosys Techs. Ltd.*,
　　2013 WL 12385035 (W.D. Tex. Sept. 9, 2013)................................................................16

**State Cases**

*BMG Direct Mktg., Inc. v. Peake*,
　　178 S.W.3d 763 (Tex. 2005)...........................................................................................16

*Dallas Morning News v. Tatum*,
　　554 S.W.3d 614 (Tex. 2018)...........................................................................................18

*Fluor Enters. v. Conex Int'l*,
　　273 S.W.3d 426 (Tex. App.—Beaumont 2008, pet. denied).................................................20

*Forbes v. Granada Biosciences*,
　　124 S.W.3d 167 (Tex. 2003)......................................................................................17, 19

*Hurlbut v. Gulf Atl. Life Ins.*,
　　749 S.W.2d 762 (Tex. 1987)...........................................................................................20

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015)........................................................................20

*Innovative Block of S. Tex. v. Valley Builders Supply*,
    603 S.W.3d 409 (Tex. 2020)...............................................................17, 19

*Mem'l Hermann Health Sys. v. Gomez*,
    649 S.W.3d 415 (Tex. 2022)........................................................................17

*Rogers v. Daniel Oil & Royalty Co.*,
    110 S.W.2d 891 (Tex. 1937)........................................................................16

*Texas Campaign for the Env't v. Partners Dewatering Int'l*,
    485 S.W.3d 184 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.) ..................19

*Waste Mgmt. of Tex. v. Tex. Disposal Sys. Landfill*,
    434 S.W.3d 142 (Tex. 2014)...............................................................17, 20

**Federal Statutes**

17 U.S.C. § 107.............................................................................................10

Copyright Act.............................................................................................5, 9

**State Statutes**

Tex. Ins. Code
    § 541.052...................................................................................2, 21, 22
    § 541.052(a)........................................................................................22

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................4, 10

**Other Authorities**

4 Nimmer on Copyright
    § 13F.08 ...............................................................................................14
    § 13F.10 ...............................................................................................11

64 Tex. Jur. 3d Restitution Etc. § 10............................................................16

## I.    INTRODUCTION

In 2023, Defendant State Farm Mutual Automobile Insurance Company ("State Farm") introduced a "Gamerhood" advertising campaign ("Campaign"), invoking the medium of video games, and deploying a range of innovative and entertaining content to educate younger consumers about insurance.  Among many pieces of collateral used in the Campaign was a six-second online video spot ("Video") featuring State Farm's spokesman, Jake from State Farm, interacting with a 1980s-era arcade console for the game *Crystal Castles*.  While the console's marquee and screen were covered with a fictional game title and screen created for the Video, portions of the game's original cabinet (the "Wrap")—with what appear to be several graphical elements from the arcade game—are partially and briefly visible for a few seconds during the Video.  Seeking a windfall for the inadvertent and fleeting use of a decades out-of-date arcade game cabinet, Atari filed this action against State Farm and its marketing and production partners, The Marketing Arm, Inc. ("TMA") and August Pask Partners LLC, d/b/a Hudson Editorial ("Hudson") (collectively, "Defendants"). The Court should dismiss the Complaint, for the following reasons:

***First***, Atari alleges infringement of three registered copyrights without alleging sufficient information to plausibly claim how each was infringed by the Video, instead opting to vaguely contend that it owns copyrights in "video game software," "computer files," and unspecified "audiovisual material."  Such deficient allegations are facially implausible under well-established pleading principles.

***Second***, any use of copyrighted material in the Video is inactionable *de minimis* use, because the Wrap appears only as incidental and insignificant background material.  It is substantially obscured by an actress during the brief four-second period in which it appears.

1

*Third*, Defendants' use of any copyrighted material in the Video is protected by the fair-use doctrine, because Defendants' purpose was highly transformative and the Video has no conceivable impact on the market for Atari's copyrighted work.

*Fourth*, the unjust enrichment claim fails because, as this Court has repeatedly held, unjust enrichment is not a standalone cause of action under Texas law.  It fails for the additional reason that Atari cannot obtain equitable relief where, as here, it has adequate remedies at law.

*Fifth*, the business disparagement claim fails because Atari does not allege any false or disparaging statement, Defendants' malice, or special damages caused by any such statement.

*Sixth*, the unfair competition claim fails because the predicate violation—the business disparagement claim—is implausible, and because Atari does not allege the Video impacted Atari's business.

*Seventh*, the claim under Tex. Ins. Code § 541.052 fails because that statute does not apply to the facts of this case, as Defendants made no alleged statement about the "business of insurance" and Atari is not in the insurance business.  Even if it did apply, Defendants made no alleged misstatement about Atari or its technology in the Video.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  State Farm, the Campaign, and the Video.

State Farm is the largest property and casualty insurer in the United States.  Compl. ¶ 26. In 2023, working with its marketing and production partners—Defendants Hudson and TMA, respectively—State Farm introduced the Campaign.  Compl. ¶ 30.  The Campaign was designed to use video games as the vehicle to educate younger demographics about insurance.  It consisted of a wide range of innovative and entertaining collateral, centered on a "first-of-its-kind, multi-episode gaming competition, combining live gameplay and commentary, entertaining surprises,

2

appearances by Jake from State Farm, and prize giveaways to viewers."[1]  One piece of marketing collateral from the Campaign—the Video—is the subject of this lawsuit.  Compl. ¶ 30.

The Video is a six-second-long clip, the first four seconds of which contain the disputed content (the final two seconds show only an image of State Farm's logo).  *See* Ex. A.[2]  The Video focuses on a brief interaction between State Farm's spokesman, Jake from State Farm, and an unidentified actress.  The actress stands in front of a vintage arcade console, the marquee of which contains the title of a fictional video game, "Witch's Broom."  The screen of "Witch's Broom" is turned off.  The actress gestures to Jake, in a manner suggesting she needs help getting the game up and running.  Jake wraps his fist once on the front of the console, causing the screen to turn on, and the two smile to one another.  The scene cuts away to State Farm's logo for the remainder of the Video.  *Id.*

### B.    Atari's Allegations.

Atari was an early developer and manufacturer of arcade video games.[3]  Atari's *Crystal Castles* game, which dates to the early 1980s, is the subject of this lawsuit.  *See* Compl., Ex. 1 (1983 copyright registrations for *Crystal Castles*).  The game consists of its protagonist, a character called "Bentley Bear," collecting gems and other items while navigating a three-dimensional space.  Compl. ¶ 22.

Atari alleges that the Video unlawfully features copyrighted visual material from the Wrap to the original *Crystal Castles* arcade cabinet.  Compl. ¶ 31.  At the same time, Atari acknowledges

---

[1] https://shortyawards.com/15th/state-farm-gamerhood-challenge (cited at Compl. ¶ 36 n.2).

[2] The Video is incorporated by reference in the Complaint and thus subject to consideration on a motion to dismiss.  Defendants include the Video as Exhibit A in the Appendix. APP-1. A DVD copy of the Video is being manually filed.

[3] It is unclear whether Atari continues to develop new video games, or whether its business is now devoted to licensing decades-old game-related intellectual property.  *See* Compl. ¶¶ 19-25.

that Defendants "replac[ed] the words 'Crystal Castles' with 'Witch's Broom' on the" console's marquee.  *Id.*  Atari does not dispute that the console's marquee and video screen depicted in the Video are not associated with *Crystal Castles*.  Atari claims that the Video infringes three registered copyrights: "Nos. VA 0-162-740 (Audiovisual work of Crystal Castles); PA 0-185-123 (Video Game Software); TX 3-580-532 (Computer Files)."[4]  Compl. ¶ 2 & Ex. 1.

Atari also alleges that the Video "placed Atari and its works in a bad light" when Jake from State Farm "hits the front of the cabinet … suggesting falsely and disparagingly to consumers that Atari's cabinets are low-quality, faulty, and/or unreliable."  *Id.* ¶ 32.

On the basis of these allegations, Atari asserts five claims for relief: (1) Copyright infringement under 17 U.S.C. §§ 101, *et seq.*; (2) unjust enrichment; (3) business disparagement; (4) unfair competition; and (5) false information and advertising under Tex. Ins. Code § 541.151.  Atari asserts the first four claims against all Defendants, and the fifth against State Farm alone.  *See* Compl. ¶¶ 40-73.

### III.    LEGAL STANDARD

To overcome a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court should grant the motion if the plaintiff does not plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" because facts "merely consistent with" liability are insufficient. *Iqbal*, 556 U.S. at 678 (citation omitted).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation

---

[4]  Defendants refer to these Registrations as the '740 Registration, '123 Registration, and '532 Registration, respectively.

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level" and the Court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (citation and internal quotation marks omitted). On a motion to dismiss, courts may consider "the actual contents of the pleadings and the documents either attached or incorporated by reference into a complaint." *Nourse v. Caffey*, 2014 WL 2039053, at *2 (N.D. Tex. May 16, 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

## IV.    ARGUMENT

### A.    The Copyright Act Claim Fails.

#### 1.    The Complaint Fails to Plausibly Allege Infringement of Atari's Crystal Castles Copyrights.

To state a claim for copyright infringement, Atari must allege "ownership of a valid copyright and copying of constituent elements of the work that are copyrightable." *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 407 (5th Cir. 2004) (citations omitted). Atari alleges ownership of three registered copyrights: "Nos. VA 0-162-740 (Audiovisual work of Crystal Castles); PA 0-185-123 (Video Game Software); TX 3-580-532 (Computer Files)." Compl. ¶ 2 & Ex. 1. But Atari's infringement allegations are implausible, because it fails to identify the "constituent elements" of any of the three Registrations, let alone how Defendants copied those elements.

*First*, the Complaint alleges nothing about the "constituent elements" of the three Registrations. *Compaq*, 387 F.3d at 407. Each of the '123 and '532 Registrations states only that it covers a "Computer File," supported by a "videogame" and a "printout," respectively. The '740 Registration contains only a one-word description ("Advertisement") and notes a "Previous Registration" of an "[a]udiovisual work of video game entitled Crystal Castles." It is otherwise

silent about what creative material is included within its protective scope.  Compl., Ex. 1.  What Atari contends is covered by the '740 Registration is a mystery: is it the Bentley Bear character, the *Crystal Castles* cabinet Wrap, the packaging for the *Crystal Castles* game cartridge, some unidentified *Crystal Castles* advertisement, or something else entirely?

***Second***, although the Complaint alleges that Atari owns three *Crystal Castles*-related copyright Registrations, it fails to take the next step and identify how the Video copied any of the "constituent elements" of these Registrations.  *See* Compl. ¶ 2 & Ex. 1; *Compaq*, 387 F.3d at 407. With no substantive explanation of each Registration, as discussed above, it is not possible to determine whether and to what extent the Wrap's visual material shown in the Video implicates any particular Registration.  For example, the '532 Registration covers the "printout" of a "computer file."  Compl., Ex. 1.  But if this is just a printout of computer code, without any of the imagery appearing on the Wrap, Defendants cannot have infringed the '532 Registration.

Atari specifies nothing about what its Registrations cover, or how Defendants have infringed them.  It is not enough to simply declare that because Atari has a series of *Crystal Castles*-related copyrights, any use of *Crystal Castles* visual material automatically infringes every one of those copyrights.  Atari's allegations are mere legal conclusions, entitled to no weight on a motion to dismiss.  *Twombly*, 550 U.S. at 555.  The Court should dismiss the First Cause of Action.

## 2. The Copyright Claim Fails Under the *De Minimis* Use Doctrine.

"The *de minimis* doctrine provides that if unauthorized copying is sufficiently trivial, 'the law will not impose legal consequences.'"  *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 639 (S.D. Tex. 2007) (quoting *On Davis v. The Gap, Inc.,* 246 F.3d 152, 172-73 (2d Cir. 2001)). In applying the *de minimis* doctrine to visual works like the Video, "the observability of the copyrighted work is critical, and courts will consider the length of time the copyrighted work is observable as well as factors such as focus, lighting, camera angles, and prominence."  *Gottlieb*

*Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008) (citation omitted).  Observability is measured from the perspective of the "average lay observer," based on a review of the challenged work.  *Id.* (quoting *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 218 (2d Cir. 1998)).  Courts regularly grant motions to dismiss on the basis of *de minimis* use.  *See, e.g.*, *id.* at 632-34; *Kelley v. Morning Bee*, 2023 WL 6276690, at *6 (S.D.N.Y. Sept. 26, 2023); *LMNOPI v. XYZ Films, LLC*, 449 F. Supp. 3d 86, 91-92 (E.D.N.Y. 2020).

*Gottlieb* applied the *de minimis* doctrine to grant a motion to dismiss.  There, the plaintiff claimed that the defendant infringed the copyright in designs on a pinball machine by including the machine in the background of a scene in a film.  590 F. Supp. 2d at 629.  Although the machine appeared in the film for about three minutes, the court held that the defendant's use of the machine "was *de minimis* as a matter of law."  *Id.* at 630-32.  The court noted that the machine "is always in the background; it is never seen in the foreground.  It never appears by itself or in a close-up.  It is never mentioned and plays no role in the plot."  *Id.* at 632.  It also observed that "[i]t is almost always partially obscured . . . and is fully visible for only a few seconds during the entire scene."  *Id.*

In *LMNOPI*, the court granted a motion to dismiss based on the *de minimis* doctrine.  449 F. Supp. 3d at 91-92.  In that case, an artist alleged that her mural appeared for a handful of seconds in the opening sequence of a feature film, "in a full-screen shot, in perfect focus and unobstructed to the viewer."  *Id.* at 89-90.  The court disagreed with the plaintiff's characterization, observing that the mural appeared fleetingly, only in the background, and that a truck and an actress partially obscured the view of the mural.  *Id.* at 91.  It further noted that "the focus of the scene in which

the Mural appears is undeniably a female actress – not the Mural," and that "[t]he Mural is never referenced in the Film." *Id.* at 92.[5]

    *Kelley* is another pleading-stage *de minimis* use case, where a series of the plaintiff's copyrighted photographs appeared incidentally in the background of one scene in a documentary film. *See* 2023 WL 6276690, at *10. The court observed that "[a]t no point are *any* of the ten photographs at issue viewable close-up, in focus, or prominently as the center of attention—nor are they commented upon in the audio or discussed in any way—in any shot of the fifteen cumulative seconds during which any photograph appears" in the film. *Id.* (emphasis in original). In dismissing the copyright claim, the court noted that "[d]espite the repeated showings of the photographs across five discrete clips, a strongly cumulative effect is not present," such that there was no reinforcing "repetitive effect" on the viewer. *Id.* After distinguishing cases in which the "underlying visual work was purposefully chosen to decorate the scene," the court concluded that the "trivial use of each photograph in the . . . scene does not rise to the level of actionable copying." *Id.*

    Atari offers no plausible allegations that Defendants' use of the Wrap in the Video was anything more than inactionable *de minimis* use. The most significant feature of the arcade cabinet—the *Crystal Castles* marquee—is replaced with the title of a fictional video game. The screen beneath the marquee also contains a non-Atari image in place of content from *Crystal Castles*. These modifications create the impression that the arcade cabinet is not an Atari cabinet, and establish the context in which the limited use of the Wrap must be viewed.

---

[5] *See also Gayle v. Home Box Off., Inc.*, 2018 WL 2059657, at *2-3 (S.D.N.Y. May 1, 2018) (dismissing copyright action over graffiti that appeared briefly in a television show, finding in part "[t]he overall scene [was] brief, and the graffiti at issue appear[ed] on screen for no more than two to three seconds[,] . . . the graffiti [was] never pictured by itself . . . and [the graffiti] play[ed] absolutely no role in the plot") (internal quotation marks citation omitted).

The Wrap is an ancillary feature in the Video.  Its appearance is fleeting, lasting for a total of four seconds.  *See* Ex. A & Compl. ¶ 30.  During the entirety of that period, the majority of the Wrap is obscured by an actress moving in the foreground.  *Id.*  The focus of the Video is the interaction between the actress and Jake from State Farm.  *Id.*  Bentley Bear, the protagonist of *Crystal Castles*, is never fully visible.  *Id.*  All viewers can make out is a collection of geometric shapes.  *Id.*  As in *Gottlieb*, the Wrap "is always in the background; it is never seen in the foreground.  It never appears by itself or in a close-up.  It is never mentioned and plays no role in the plot" of the Video.  590 F. Supp. 2d at 632.  The "average lay observer" certainly would not recognize *Crystal Castles*—a four-decade-old video game—given the fleeting appearance of the least-significant fragments of the Wrap in the Video.  *Id.*  Under these circumstances, any use Defendants made of content covered Atari's Registrations is *de minimis* and thus not actionable.  *See, e.g.*, *Kelley*, 2023 WL 6276690, at *6 (granting motion to dismiss copyright claim due to *de minimis* use, when "the photographs [were] oftentimes obstructed, out of focus … displayed at an angle to the viewer, and at all times in the background – far from appearing prominently").

### 3.    The Copyright Claim as to Registration No. VA 0 162-740 Fails Under the Fair Use Doctrine.

"The fair use doctrine [is] an equitable rule or reason that permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster."  *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021) (cleaned up).  To determine whether a particular use of copyrighted material is "fair" under the Copyright Act, the statute articulates four factors for consideration:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

*Andy Warhol Found. for the Visual Arts v. Goldsmith*, 598 U.S. 508, 527 (2023) (quoting 17 U.S.C. § 107).  The statute's "list of factors is not exhaustive," and "some factors may prove more important in some contexts than in others."  *Google*, 593 U.S. at 19.  Courts routinely address fair use at the pleading stage.  *See, e.g.*, *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 325-26 (5th Cir. 2022) (affirming dismissal on fair-use grounds).[6]

As explained in detail below, the Court should find that Defendants' use of the Wrap in the Video is "fair" under Section 107.  That use was limited and incidental.  The Wrap appeared in four seconds of a video clip, and it was obscured in significant part during the entire scene—both by an actress standing in front of the Wrap and by Defendants' undisputed replacement of the "Crystal Castles" marquee and video screen with non-infringing content.  Atari does not—and cannot—allege that the fleeting use of minimal graphics on the side of an arcade-game cabinet in an advertisement for insurance products has any relation to Atari's use of promoting its arcade game, or that Defendants' use of the Wrap somehow questioned the integrity or impacted the market for Atari's forty-year-old arcade game cabinet or forty-year old video game.

a.      **The Purpose and Character of the Use.**

The first statutory factor "considers the reasons for, and nature of, the copier's use of an original work."  *Andy Warhol*, 598 U.S. at 528.  Courts "have considered whether the copier's use 'adds something new, with a further purpose or different character, altering' the copyrighted work

---

[6] *See also, e.g.*, *Brown v. Netflix*, 855 F. App'x 61, 62-64 (2d Cir. 2021) (affirming Rule 12(b)(6) dismissal on fair-use grounds); *Marano v. Metro. Museum of Art*, 844 F. App'x 436, 438-39 (2d Cir. 2021) (same).

'with new expression, meaning or message'" *Google*, 593 U.S. at 29 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).  "A use that has a further purpose or different character is said to be 'transformative.'"  *Andy Warhol*, 598 U.S. at 529 (quoting *Campbell*, 510 U.S. at 579).  The first factor ultimately "asks 'whether *and to what extent*' the use at issue has a purpose or character different from the original.  The larger the difference, the more likely the first factor weighs in favor of fair use."  *Id.* (emphasis in *Andy Warhol*) (citation omitted); *see also, e.g.*, 4 Nimmer on Copyright § 13F.10 ("purpose asks what defendant set out to achieve *ex ante*").  Another consideration "often taken up under the first factor" is "commerciality."  *Google*, 593 U.S. at 32.  Although "a finding that copying was not commercial in nature tips the scales in favor of fair use," the "inverse is not necessarily true, as many common fair uses are indisputably commercial."  *Id.*  "Most transformative uses … ultimately qualify as fair."  4 Nimmer § 13F.10.

The purpose and character of Defendant's limited use of the Wrap in the Video are entirely transformative.  Atari's alleged copyrights are associated with a specific video game, and while Atari has failed to allege what specific *Crystal Castles* content is copyrighted (or under which Registration), it is undisputed that the imagery on the Wrap was created for the purposes of promotion and decoration to entice consumers to play a specific video game in an arcade.  *See* Compl. ¶ 19 ("Atari and its successors have pushed the boundaries of game design, captivating wide audiences with its arcade games, such as [] Crystal Castles").

But what Defendants "set out to achieve," 4 Nimmer § 13F.10, was to show Jake from State Farm interacting with an arcade console for a fictional video game ("Witch's Broom"), on which a fragment of the Wrap appears incidentally.  The Video is not an effort to entice consumers to play video games, let alone any game using Atari's intellectual property, or to otherwise compete with Atari.  The Video's ultimate objective was the marketing of insurance products, as

11

part of a broader Campaign, designed invoke video games generally as medium to connect with younger consumers, with the identity of any particular game referenced in the Video unimportant and incidental to that purpose. *See, e.g.*, *Kelley*, 2023 WL 6276690, at *12 (finding incidental appearance of copyrighted photographs was "transformative" because "the purpose in using the copyrighted images … is plainly different from the original purpose for which they were created" (omission in original) (internal quotation marks and citation omitted)); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 610 (2d Cir. 2006) (fair use where there was "a purpose separate and distinct from the original artistic and promotional purpose for which the images were created"). This is shown by the facts that Defendants (a) altered the most significant portion of the Wrap, swapping the "Crystal Castles" marquee with a fictional game title, and (b) replaced the *Crystal Castles* screen with an unrelated game image. *See* Compl. ¶ 30.

### b.    The Nature of the Copyrighted Work.

The second factor—the "nature of the copyrighted work"—considers whether "the work has been appropriated for its 'expressive elements,' rather than to disseminate 'the underlying facts.'" *Bell*, 27 F.4th at 323 (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563-64 (1985)). This factor also considers "whether the work has been published." *Id.* Although the Wrap is creative in nature and has been published, any advantage to Atari in the fair-use analysis is "meager," because the "nature of the work is widely considered the least significant fair-use factor." *Id.* (citing cases). In *Bell*, the Fifth Circuit dismissed a copyright complaint on a motion to dismiss, even though it found the work at issue to be "creative," with the second factor favoring the copyright holder. *Id.* at 323, 325-26.

### c.    The Amount and Substantiality of the Portion Used.

The third factor— "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"— "consider[s] whether the amount copied is either a quantitatively

or qualitatively significant part of the original." *Bell*, 27 F.4th at 323-24 (quoting 17 U.S.C. §

107(3)) (citing *Campbell*, 510 U.S. at 586-87). Like the second factor, the third factor is of lower

consideration in the fair-use analysis. *See id.* at 321 ("Courts typically give particular attention to

factors one and four[.]").

      This factor weighs heavily in favor of Defendants. The allegedly infringing advertisement

is a four-second clip with the bulk of the Wrap obscured during the clip's entire duration. The

name on the console's marquee and the image on the screen have been replaced with undisputedly

non-infringing content. It is never possible during the entirety of the clip to see an unobstructed

view of Atari's Bentley Bear character on the Wrap, thus rendering Bentley Bear nearly

unidentifiable.

      Atari cannot plausibly claim that Defendants used a "quantitatively or qualitatively

significant part of the original" work because, as explained above, Atari fails to allege anything

about the substantive scope of any of its three alleged Registrations. Presumably, if any of Atari's

Registrations were limited to the content on the Wrap, which they are not, Atari would have alleged

as much in the Complaint. The fact that it failed to do so indicates that the Registrations cover

substantial additional content beyond the graphics on the Wrap—including the computer files for

an entire video game. Accordingly, Defendants have only used a portion of the Wrap, which itself

embodies at best a mere portion of the creative material included Atari's alleged Registrations.

### d.    The Effect on the Market for Atari's Copyright.

      The fourth fair-use factor—"'the effect of the use' on the market for and value of the

copyrighted work"—"is undoubtedly the single most important element of fair use." *Bell*, 27 F.4th

at 324 (quoting 17 U.S.C. § 107(4) and *Harper & Row*, 471 U.S. at 566). This factor "consider[s]

actual market harm" and "whether widespread use of the work in the same infringing fashion

'would result in a substantially adverse impact on the potential market' for the original work and

any derivatives." *Id.* (quoting *Campbell*, 510 U.S. at 590).  As the leading treatise explains, "[t]he primary consideration under factor four is whether defendant's utilization functions as a market substitute for plaintiff's work," with the "proper focus … limited to whether defendant's use supplants potential commercial opportunities that rightly belong to plaintiff."  4 Nimmer on Copyright § 13F.08.

The Complaint contains no allegations suggesting the Video had any impact whatsoever on the market for Atari's copyrighted material.  Atari offers only implausible and conclusory boilerplate, claiming that Defendants' "activities … have diminished and will continue to diminish the revenues that Atari would otherwise receive."  Compl. ¶ 44.  But Atari alleges no actual facts explaining how it has lost—or will lose in the future—any revenue due to Defendants' partial and obscured depiction of a forty-year-old arcade game Wrap in a four-second video clip.  Atari never alleges Defendants created a "market substitute" for Atari's copyrighted material, or otherwise appropriated "potential commercial opportunities that rightly belong" to Atari.  *Google*, 593 U.S. at 97; 4 Nimmer § 13F.08.  Nor could it.  Atari does not allege there is a standalone market for the Wrap itself.  But even if the market in question is for the *Crystal Castles* game itself, it is inconceivable that Defendants' limited use of the Wrap could impact the market for a 1983 video game.  No consumer is more or less likely to play or buy *Crystal Castles* because of the Video— if it is even possible to play or purchase this decades-old game today.  *See, e.g.*, *Bell*, 27 F.4th at 325 ("An online post is not a market substitute for a coffee mug.").

Atari's alleged injury instead appears to be Defendants' failure to pay Atari for an exorbitant license.  *See* Compl. ¶¶ 42-44 (alleging Defendants' failure to obtain a license).  But Atari "is not entitled to a licensing fee for a work that otherwise qualifies for the fair use defense." *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 117-18 (2d Cir. 1998) (rejecting copyright

owner's "argument for actual market harm . . . that the defendant has deprived her of a licensing fee by using the [copyrighted] work as an advertisement"); *see also, e.g.*, *Bell*, 27 F.4th at 325 (rejecting argument that alleged infringement might "impact [copyright owner's] ability to license similar uses" of the work, because courts "cannot recognize a theoretical market for licensing the very use at bar") (internal quotation marks omitted)).  Because Atari "has failed to plausibly allege a 'substantially adverse impact' on a legitimate market for [its] copyrighted work," the "fourth factor thus weighs in favor of fair use."  *Bell*, 27 F.4th at 325 (quoting *Campbell*, 510 U.S. at 590).

### B.   Atari Fails to State a Claim for Unjust Enrichment.

Atari's Second Cause of Action is for unjust enrichment.  This claim fails for three reasons, and the Court should dismiss it with prejudice:

*First*, "[a]s this [C]ourt recently held, unjust enrichment is not an independent cause of action under Texas law." *Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*, 2021 WL 3492339, at *8 (N.D. Tex. Aug. 9, 2021) (Fitzwater, J.) (citing *Taylor v. Trevino*, 2021 WL 347566, at *12 (N.D. Tex. Feb. 2, 2021) (Fitzwater, J.) & *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (Fitzwater, J.)) (dismissing unjust enrichment claim).  As the Court explained in another case, "unjust enrichment" instead "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay." *Taylor v. Trevino*, 569 F. Supp. 3d 414, 435 (N.D. Tex. 2021) (Fitzwater, J.) (internal quotation marks and citation omitted).

*Second*, even if the Court were to treat unjust enrichment as a standalone claim in Texas, the only remedy for such a claim—equitable restitution—is not available in this case. "Unjust enrichment requires a party to make restitution to another if they have been enriched *at the other party's expense.*  This means that the benefit received by a defendant must come directly from a plaintiff." *Greathouse v. Capital Plus Fin. LLC*, 2023 WL 5759250, at *16 (N.D. Tex. 2023)

(citation omitted) (emphasis in original); 64 Tex. Jur. 3d Restitution Etc. § 10 ("Unjust enrichment is not an independent cause of action; rather, it characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."). In *Greathouse*, the court dismissed an attempted unjust enrichment claim because the plaintiffs "conferred no benefit or enrichment" on the defendants. *Id.* Here, Defendants obtained no money or other benefit "directly from" Atari, and there is nothing for Defendants to restore or "repay" to Atari. *Id.*

*Third*, unjust enrichment is equitable in nature. Because Atari has an adequate remedy at law for its alleged injuries—a series of copyright and tort claims for damages—it cannot obtain equitable relief. *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005) ("an adequate legal remedy may render claims of unjust enrichment … unavailable"); *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 894 (Tex. 1937) ("In cases where an adequate and complete remedy at law is provided, our courts, though clothed with equitable jurisdiction, will not grant equitable relief."); *Versata Software, Inc. v. Infosys Techs. Ltd.*, 2013 WL 12385035, *5 n.6 (W.D. Tex. Sept. 9, 2013) (rejecting "equitable remedy" of constructive trust because the plaintiff had "numerous adequate legal remedies, either through copyright law or non-preempted state law claims").

### C.   Atari Fails to State a Claim for Business Disparagement.

Atari's Third Cause of Action is for business disparagement. Under Texas law, "[t]o prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes v. Granada Biosciences*, 124 S.W.3d 167, 170 (Tex. 2003) (citation omitted).

"A business disparagement claim is similar in many respects to a defamation action." *Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex. 2022) (citation omitted). However, the elements of business disparagement "are more stringent than those of defamation because business disparagement protects against pecuniary loss" rather than reputational harm. *Innovative Block of S. Tex. v. Valley Builders Supply*, 603 S.W.3d 409, 417 (Tex. 2020); *see also Waste Mgmt. of Tex. v. Tex. Disposal Sys. Landfill*, 434 S.W.3d 142, 155 (Tex. 2014) (defamation "seeks to protect reputation interests" whereas business disparagement "seeks to protect economic interests against pecuniary loss"). "For example, in business disparagement the plaintiff must prove the defendant's statement false, whereas in defamation the defendant bears the burden of proving truth. In business disparagement, the plaintiff must always prove malice, whereas in defamation mere negligence is sufficient in some cases." *Innovative Block*, 603 S.W.3d 409 at 417 n.3. "[I]n disparagement only special damages can be recovered for actual pecuniary loss, whereas in defamation per se the existence of an injury to reputation is presumed and no actual financial damage need be proved." *Id*.

Atari fails to allege multiple elements of business disparagement:

***First***, Atari does not allege Defendants published ***any*** statement about Atari or its products, let alone a false and disparaging one. Atari instead alleges—implausibly—that Jake from State Farm's act of wrapping on the front of the arcade cabinet "suggest[ed] falsely and disparagingly to consumer that Atari's cabinets are low-quality, faulty, and/or unreliable." Compl. ¶ 32. Atari appears to be claiming "defamation by implication," where it can only prevail if the "meaning [it] alleges arises from an objectively reasonable reading." *Dallas Morning News v. Tatum*, 554 S.W.3d 614, 631 (Tex. 2018).

Atari's interpretation of the Video is not "objectively reasonable."  Atari admits that the Video made no direct reference to Atari or the *Crystal Castles* game title; instead, Defendants replaced the marquee with the name of a fictional video game.  Compl. ¶ 31.  Defendants also used a non-Atari game screen in the Video.  *See* Ex. A.  Both of these acts suggest an effort to eliminate any association with Atari.

Nor do the characters in the Video make any statement about the quality of Atari's technology.  The Video is a fictional and humorous homage to video games generally, featuring a **40-year-old** arcade cabinet, and employing the common entertainment trope of percussive maintenance.[7]  Percussive maintenance has been used by comedians for many years as a comedy trope and it does not constitute a factual statement.  It is realistic—if not expected—that a piece of video technology from the 1980s may not function as it once did, whether due to a loose wire, physical breakdown of constituent parts, or routine wear-and-tear.  A commentary on the effects of time on a technology product says nothing about whether that product was faulty when it was made—let alone that Atari is a manufacturer of faulty technology.

**Second**, Atari fails to allege malice.  To establish malice, "a plaintiff claiming business disparagement must prove that the defendant made a statement 'with knowledge that it was false or with reckless disregard of whether it was true or not.'"  *Texas Campaign for the Env't v. Partners Dewatering Int'l*, 485 S.W.3d 184, 201 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.) (cleaned up).  "Reckless disregard must be established by evidence that the defendant

---

[7] *See* https://tvtropes.org/pmwiki/pmwiki.php/Main/PercussiveMaintenance (last visited May 28, 2024); https://en.wiktionary.org/wiki/percussive_maintenance#:~:text=percussive%20maintenance%20(uncountable),that%20it%20would%20then%20work. (describing percussive maintenance as "(humorous) [t]he use of physical concussion, such as a knock or a tap, in an attempt to make a malfunctioning device work.") (last visited May 28, 2024).

entertained serious doubts as to the truth of the statements made." *Id.* (citing *Fluor Enters. v. Conex Int'l.*, 273 S.W.3d 426, 439 (Tex. App.—Beaumont 2008, pet. denied)). "'An error in judgment is not enough' to establish reckless disregard," nor is "[m]ere negligence." *Id.* (quoting *Casso v. Brand*, 776 S.W.2d 551, 563 (Tex. 1989); *Forbes*, 124 S.W.3d at 171-72).

The Complaint not only fails to allege that Defendants made a statement about Atari, it alleges nothing about Defendants' knowledge of the veracity of any such statement. To the extent Defendants made any statement, it was nothing more than the truism that old technology sometimes malfunctions. As explained above, this was not a commentary about Atari or the quality of its technology. But even if the Court were to find that the Video constitutes a false or disparaging statement about Atari, Defendants' inclusion of a portion of the Wrap in the Video amounts to "mere negligence" that does not satisfy the malice requirement. *See Forbes*, 124 S.W.3d at 171.

***Third***, Atari fails to allege it suffered special damages. "Because business disparagement, unlike defamation, is solely concerned with economic harm, proof of special damages is a fundamental element of the tort." *Innovative Block*, 603 S.W.3d at 417 (cleaned up). "Special damages are synonymous with economic damages and are distinguishable from general damages." *In re Lipsky*, 460 S.W.3d 579, 592 n.11 (Tex. 2015); *Waste Mgmt. of Tex..*, 434 S.W.3d at 155 (general damages cannot sustain a claim for business disparagement). A plaintiff alleging commercial disparagement must "establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales." *Teel v. Deloitte & Touche*, 2015 WL 9478187, at *4 (N.D. Tex. Dec. 29, 2015) (quoting *Hurlbut v. Gulf Atl. Life Ins*., 749 S.W.2d 762, 767 (Tex. 1987)). The plaintiff must also prove "that the disparaging communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized

19

or liquidated, such as specific lost sales, loss of trade, or loss of other dealings." *Fluor*, 273 S.W.3d at 440 (citation omitted); *see also Hurlbut*, 749 S.W.2d at 767 ("[T]he communication must play a substantial part in inducing others not to deal with the plaintiff.").

Atari alleges only legal conclusions about its pecuniary loss; *i.e.*, that it suffered "lost profits and lost revenues, lost customers, and loss of business, goodwill, and reputation among existing and prospective customers." Compl. ¶ 62. This failure to allege actual facts is fatal to the business disparagement claim. *See Encompass Off. Sols. v. Ingenix*, 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011) (finding allegation that "[t]he publication of these statements has caused [plaintiff] to suffer lost profits and lost goodwill/business reputation" was "conclusory," "void of any supporting facts," and "insufficient to support a claim for business disparagement" (first alteration in original) (citation omitted)); *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*, 2021 WL 3618113, at *15 (N.D. Tex. Aug. 16, 2021) (holding plaintiff's "conclusory and content-less statements" of loss were inadequate to show special damages); *AHBP v. Lynd*, 649 F. Supp. 3d 371, 399 (W.D. Tex. 2023) (granting motion to dismiss on a business disparagement claim because plaintiff failed to allege special damages); *Teel*, 2015 WL 9478187, at *6 (same).

Atari also fails to allege that the Video caused consumers to not deal with Atari. *See* Compl. ¶ 62. In fact, the Complaint's only reference to consumer reaction to the Video is a collection of online comments directing a negative reaction *toward State Farm* while treating Atari and *Crystal Castles* with reverence. *See id.* ¶ 37.

### D.  Atari Fails to State a Claim for Unfair Competition.

Atari's Fourth Cause of Action is for unfair competition. Under Texas law, unfair competition "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Grand Time v. Watch Factory*, 2010 WL 92319, at *3 (N.D. Tex. Jan. 6, 2010) (quoting *Taylor Pub. v.*

*Jostens*, 216 F.3d 465, 486 (5th Cir. 2000)). "To recover on this tort, a plaintiff must show an illegal act by the defendant which interfered with the plaintiff's ability to conduct his business." *Id*. "The illegal act must constitute at least an independent tort if not a violation of criminal law." *Id*. This claim fails for two reasons:

**First**, Atari appears to base its unfair competition claim on its business disparagement claim. *Compare* Compl. ¶¶ 58-62 *with id.* ¶¶ 63-67. Because the underlying business disparagement claim fails for the reasons set forth above, *see* Section IV.C, the derivative unfair competition claim also fails.

**Second**, the Complaint fails to allege that the Video affected Atari's business in any way. *See* Compl. ¶¶ 63-67. Atari's conclusory unfair competition allegations include no factual allegations on this subject.

### E.   Atari Fails to State a Claim for False Information and Advertising.

Atari's Fifth Cause of Action is for false information and advertising under Tex. Ins. Code § 541.052. Claims under Section 541.052 require, *inter alia*, that a defendant publish or disseminate an advertisement "containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business." Tex. Ins. Code § 541.052(a). This claim fails for multiple reasons:

**First**, Section 541.052 does not apply to this case because Atari does not allege Defendants made any statement "regarding the business of insurance or a person in the conduct of the person's insurance business." The supposed misstatement—a non-verbal suggestion that Atari's technology is faulty—has nothing to do with the "business of insurance." And Atari is not in the business of insurance in any event; it is "in the video game and arcade industry." Compl. ¶ 19.

**Second**, even if Section 541.052 applies, Atari never alleges Defendants published any untrue, deceptive, or misleading statement about Atari or *Crystal Castles*. *See* Section IV.C.

*Third*, Atari's allegation that Defendants misleadingly conveyed Atari's affiliation with the Video is belied by its admission that Defendants changed the arcade cabinet's marquee and video screen of the Cabinet to obfuscate any reference to Atari and *Crystal Castles*. *See* Compl. ¶ 31.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated:  May 28, 2024

Respectfully submitted,

By: */s/ Marc A. Fuller*
   Marc A. Fuller

JACKSON WALKER LLP

Marc A. Fuller
Texas Bar No. 24032210
mfuller@jw.com
Emily Carlton
Texas Bar No. 24110812
ecarlton@jw.com
2323 Ross Ave., Ste. 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

DAVIS WRIGHT TREMAINE LLP

Nicolas A. Jampol (*pro hac vice forthcoming*)
Samuel Turner (*pro hac vice forthcoming*)
865 S. Figueroa St., 24th Floor
Los Angeles, CA 90017
Tel: (202) 973-4258
nicolasjampol@dwt.com
samturner@dwt.com

Jake Freed (*pro hac vice forthcoming*)
50 California Street, Suite 2300
San Francisco, CA  94111
Tel: (415) 276-6532
JakeFreed@dwt.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 28, 2024, a true and correct copy of the above document was

served via the ECF filing system to all counsel of record.

/s/ Marc A. Fuller
Marc A. Fuller