**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ATARI INTERACTIVE, INC., | |
| *Plaintiff* | CIVIL ACTION NO: 3:24-cv-0704-D |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *et al.*, | |
| *Defendants*. | |

**BRIEF OF PLAINTIFF ATARI INTERACTIVE, INC. IN OPPOSITION TO
DEFENDANTS STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
THE MARKETING ARM, INC. AND AUGUST PASK
PARTNERS LLC d/b/a HUDSON EDITORIAL'S MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................. 2

LEGAL STANDARD ........................................................................................... 4

ARGUMENT ....................................................................................................... 5

    I.   Atari States a Claim for Copyright Infringement ................................. 5

    II.  Defendants' Use Was Not *De Minimis* ............................................... 6

    III.   Defendants' Misappropriation of Atari's IP Was Not Fair Use. ................... 11

       A. The Purpose and Character of the Use ........................................ 12

       B. The Nature of the Copyrighted Work ......................................... 15

       C. The Amount and Substantiality of the Portions Used ..................... 15

       D. The Effect on the Market for Atari's Copyright ......................... 16

    IV.   Atari States a Claim for Unjust Enrichment ................................. 18

    V.  Atari States a Claim for Product Disparagement ............................... 21

    VI.   Atari States a Claim for Unfair Competition ................................. 24

    VII.  Atari States a Claim for False Information and Advertising ....................... 24

CONCLUSION ................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AHBP LLC v. Lynd Co.*,
  649 F. Supp. 3d 371 (W.D. Tex. 2023) .................................................................. 22

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994) ...................................................................................... 17

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023).......................................................................................... 12, 17

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
  11 F.4th 26 (2d Cir. 2021) ....................................................................................... 17

*Arista Records LLC v. Greubel*,
  453 F. Supp. 2d 961 (N.D. Tex. 2006) ..................................................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................. 4

*Banion v. Geovera Specialty Ins. Co.*,
  2016 WL 7242536 (S.D. Tex. Dec. 15, 2016).......................................................... 19

*Bass v. United Dev. Funding, L.P.*,
  2019 WL 3940976 (Tex. App. Ct. Aug. 21, 2019).................................................... 23

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
  27 F.4th 313 (5th Cir. 2022) ............................................................... 13, 15, 16, 18

*Bonkowski v. Arlan's Dep't Store*,
  174 N.W.2d 765 (Mich. 1970)................................................................................. 21

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)........................................................................... 12, 13, 17, 18

*Chamberlin v. GEICO Indem. Co.*,
  2020 WL 5922081 (N.D. Tex. May 27, 2020) ........................................................ 25

*Compaq Computer Corp. v. Ergonome Inc.*,
  387 F.3d 403 (5th Cir. 2004) .................................................................................... 6

*Compaq Computer Corp. v. Ergonome, Inc.*,
  137 F. Supp. 2d 768 (S.D. Tex. 2001) ..................................................................... 7

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
  965 F.3d 365 (5th Cir. 2020) ...................................................................... 19, 20, 21

*Dow Jones & Co., Inc. v. Harris*,
2023 WL 417503 (W.D. Tex. Jan. 24, 2023) ............................................................... 11

*Dyer v. V.P. Recs. Retail Outlet, Inc.*,
2008 WL 2876494 (S.D.N.Y. July 24, 2008) ................................................................ 8

*Elledge v. Friberg– Cooper Water Supply Corp.*,
240 S.W.3d 869 (Tex. 2007)...................................................................................... 19

*Erosion Prevention Prod. LLC v. Pave/lock/plus II, LLC*,
2023 WL 9105685 (S.D. Tex. Nov. 22, 2023) ............................................................ 19

*Est. of Barré v. Carter*,
272 F. Supp. 3d 906 (E.D. La. 2017)................................................................... 12, 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)..................................................................................................... 5

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000)........................................................................................ 21

*Garcia v. MAC Equip., Inc.*,
2011 WL 4345205 (S.D. Tex. Sept. 15, 2011) ........................................................... 22

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
590 F. Supp. 2d 625 (S.D.N.Y. 2008) ......................................................................... 9

*Greathouse v. Cap. Plus Fin. LLC*,
690 F. Supp. 3d 610 (N.D. Tex. 2023) ...................................................................... 20

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)................................................................................ 11, 13, 14, 16

*HCL Techs. Ltd. v. Atos S.E.*,
2024 WL 1076821 (N.D. Tex. Jan. 31, 2024) ...................................................... 19, 20

*HCL Techs. Ltd. v. Atos S.E.*,
2024 WL 1094697 (N.D. Tex. Mar. 12, 2024) ........................................................... 19

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992)........................................................................................ 20

*Hirsch v. CBS Broad. Inc.*,
2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017) ................................................................ 8

*Janvey v. Alguire*,
846 F. Supp. 2d 662 (N.D. Tex. 2011) ................................................................ 19, 20

*Kelley v. Morning Bee*,
　　2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023).................................................. 9, 10

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,
　　12 F.3d 527 (5th Cir. 1994) .......................................................................... 12

*Krochalis v. Ins. Co. of N. Am.*,
　　629 F. Supp. 1360 (E.D. Pa. 1985) ................................................................ 21

*Leibovitz v. Paramount Pictures Corp.*,
　　137 F.3d 109 (2d Cir. 1998) .......................................................................... 18

*LMNOPI v. XYZ Films, LLC*,
　　449 F. Supp. 3d 86 (E.D.N.Y. 2020) .............................................................. 10

*Los Angeles News Serv. v. KCAL–TV Channel 9*,
　　108 F.3d 1119 (9th Cir. 1997) ........................................................................ 14

*NXIVM Corp. v. Ross Inst.*,
　　364 F.3d 471 (2d Cir. 2004) .......................................................................... 14

*Peteski Prods., Inc. v. Rothman*,
　　264 F. Supp. 3d 731 (E.D. Tex. 2017)............................................................ 14

*Recif Res., LLC v. Juniper Cap. Advisors, L.P.*,
　　2020 WL 5739138 (S.D. Tex. Sept. 24, 2020) ................................................ 8

*Robinson v. Radio One, Inc.*,
　　695 F. Supp. 2d 425 (N.D. Tex. 2010) .......................................................... 22

*Sandoval v. New Line Cinema Corp.*,
　　147 F.3d 215 (2d Cir. 1998) .......................................................................... 7

*Spear Mktg., Inc. v. BancorpSouth Bank*,
　　2013 WL 3297593 (N.D. Tex. July 1, 2013) .................................................. 24

*Steadman v. Texas Rangers*,
　　179 F.3d 360 (5th Cir. 1999) ........................................................................ 22

*Straus v. DVC Worldwide, Inc.*,
　　484 F. Supp. 2d 620 (S.D. Tex. 2007) .......................................................... 7

*Sullivan v. Leor Energy, LLC*,
　　600 F.3d 542 (5th Cir. 2010) ........................................................................ 19

*Taylor v. Trevino*,
　　569 F. Supp. 3d 414 (N.D. Tex. 2021) .......................................................... 20

iv

*Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
   300 S.W.3d 348 (Tex. App. 2009)..................................................................... 19

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
   155 F. Supp. 2d 1 (S.D.N.Y. 2001) ...................................................................... 8

*United States v. Medica-Rents Co.*,
   285 F. Supp. 2d 742 (N.D. Tex. 2003) ................................................................ 21

*United States v. Montes-Salas*,
   669 F.3d 240 (5th Cir. 2012) .............................................................................. 21

*Vardeman v. City of Houston*,
   55 F.4th 1045 (5th Cir. 2022) ............................................................................... 4

*Viral DRM, LLC v. Frank Kent Country, LLC*,
   2023 WL 5284844 (N.D. Tex. Aug. 16, 2023)....................................... 11, 13, 16, 17

*VMG Salsoul, LLC v. Ciccone*,
   2013 WL 12136515 (C.D. Cal. Jan. 29, 2013) ...................................................... 7

*VMG Salsoul, LLC v. Ciccone*,
   824 F.3d 871 (9th Cir. 2016) ................................................................................ 8

*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) ................................................................................ 5

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*,
   715 A.2d 873 (D.C. 1998) .................................................................................. 21

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*,
   2023 WL 8721435 (N.D. Tex. Dec. 17, 2023) ..................................................... 12

**Statutes**

17 U.S.C. §107 ............................................................................... 12, 13, 15, 16

Tex. Ins. Code § 541.052 ....................................................................................... 25

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... 4

**Treatises**

4 Nimmer on Copyright § 13F.08............................................................................ 18

Plaintiff Atari Interactive, Inc. ("Atari") submits this brief in opposition to Defendants State Farm Mutual Automobile Insurance Company ("State Farm"), The Marketing Arm, Inc. and August Pask Partners LLC d/b/a Hudon Editorial's (collectively, "Defendants") Motion to Dismiss.

## PRELIMINARY STATEMENT

The facts of this case are not disputed: Defendants took something that did not belong to them and used it for their own benefit because they thought they could get away with it. But the law does not condone such theft and Defendants should not be able to escape liability for their blatant misappropriation of Atari's valuable intellectual property for their own commercial gain.

For over fifty years, Atari has been a global cultural force, transforming entertainment and youth culture with its innovative video games. Atari's creative output defined the aesthetics of gaming for a generation and has had a lasting legacy. As a result of Atari's long, successful history, the company has an extremely valuable intellectual property portfolio that includes numerous copyrights and trademarks that are instantly recognizable to not only the gaming community, but to the public at large, including copyrights associated with Atari's classic game, Crystal Castles.

Eyeing the cultural significance of this valuable asset, Defendants decided to misappropriate Atari's IP for use in a commercial (the "Advertisement") as part of a nationwide advertising campaign cynically designed to boost State Farm's appeal to a younger generation of customers unfamiliar with its insurance products. Defendants knew their use of Atari's IP was unauthorized and improper as they made crude, ineffective attempts to conceal their infringing activity. Defendants made Atari's IP the focal point of the entire Advertisement with the Crystal Castles cabinet wrap and Bentley Bear character presented prominently and in focus throughout. Defendants' substantial use of Atari's IP was widely recognized and denounced online and on

1

social media platforms.

In addition to their unauthorized use, Defendants portrayed Atari's products as faulty and technically degraded.  Following the distribution of the Advertisement to millions across the internet, video game enthusiasts took to social media to complain about State Farm's use of Crystal Castles—a beloved arcade game—in an insurance commercial.  Defendants damaged Atari's reputation in the same community because it created a false association between State Farm's insurance business and Atari—an association which gamers assumed (incorrectly) that Atari authorized.  Of course, Atari had done no such thing.  Instead, Atari was a victim of Defendants' underhanded tactics as they sought to cash in on Atari's storied legacy while at the same time destroying the market for legitimate and licensed uses of Atari's IP.

Critically, Defendants do not dispute that they used Atari's IP without authorization in a commercial advertisement.  Defendants instead try to escape liability at the pleading stage by drawing improper inferences and advancing strained arguments—*e.g.*, claiming that the use of the copyrighted material was *de minimis* despite its appearance in two-thirds of the Advertisement's total runtime, or arguing that its patently commercial use was fair under Section 107 of the Copyright Act.  None of the arguments withstand scrutiny.  Atari has sufficiently alleged each cause of action brought against Defendants in the Complaint and their Motion should be denied.

## **FACTUAL BACKGROUND**

Atari was founded in 1972.  Compl. ¶ 19.  Since its founding, Atari has been synonymous with groundbreaking developments in the video game industry.  *Id.*  It is widely known as the creator of numerous legendary games, including Pong, Asteroids and Crystal Castles. *Id.*  Through extensive promotion and the high quality of its games, Atari's brand has achieved global recognition.  This widespread brand recognition and goodwill is built on the back of Atari's

2

intellectual property portfolio, which includes an extensive catalogue of copyrights and trademarks. Atari's prized intellectual property portfolio is one of the company's major assets. Managing, protecting, and licensing that intellectual property is part of Atari's core business.

Atari is the registered owner of a vast number of federal copyright registrations, including three copyrights associated with the Crystal Castles video game. *Id.* ¶ 2. The copyrighted works associated with Crystal Castles include the Crystal Castles cabinet "wrap," the underlying software and cassette tapes associated with the game, and the artistic depictions of the characters therein (including the iconic Bentley Bear character).[1] *Id.* The elements of the Crystal Castles game protected by these copyrights are widely recognizable among video game enthusiasts and the public at large. *See, e.g.*, *id.* ¶ 37. Because of the widespread recognition of the Crystal Castles IP, Defendants decided to appropriate it without Atari's consent and without compensating Atari for its use.

In an effort to connect with a younger millennial and Gen Z demographic, State Farm launched the nationwide "Gamerhood" advertising campaign. *Id.* ¶ 3. State Farm admitted that the Gamerhood campaign was designed to "resonate with and educate the fickle target market (Millennials and Gen Z) about insurance in an innovative way they would embrace and find entertaining" and "g[i]ve State Farm a powerful introduction to their future consumer base and increased brand affinity." *Id.* The problem with this marketing strategy is that, in an effort to cash in on Atari's goodwill and play to consumers' nostalgia, Defendants cynically misappropriated Atari's valuable IP. *Id.*

The Gamerhood campaign included the Advertisement at issue in this lawsuit, which was

---

[1] U.S. Copyright Office Registration Nos. VA 0-162-740 (Audiovisual work of Crystal Castles); PA 0-185-123 (Video Game Software); TX 3-580-532 (Computer Files)

3

disseminated online and via social media, garnering millions of views and billions of consumer impressions.  Compl. ¶¶ 5, 30.  In the Advertisement, the "Jake from State Farm" character appears alongside an actress in front of a Crystal Castles arcade cabinet, crudely disguised in an effort to conceal the infringement by replacing the words "Crystal Castles" with "Witch's Broom."  *Id.* ¶¶ 31, 32.  The center of nearly every video frame features the Crystal Castles cabinet wrap and characters. At the end of the video, "Jake from State Farm" hits the front of the cabinet—right on Atari IP—suggesting that Atari's cabinets are low-quality, faulty, and unreliable.  *Id.* ¶ 32.

The misappropriation of Crystal Castles IP was immediately apparent to the gaming community—*i.e.*, the exact demographic that State Farm was trying to appeal to with the Advertisement.  *Id.* ¶ 37.  Gamers took to online communities to voice their dissatisfaction with State Farm's appropriation and defacement of Atari's legendary IP.  *Id.*  For example, one commenter wrote, "You think a bastardized Crystal Castles cabinet is going to make you seem cool to gamers? Think again."  *Id.*  Another opined, "Why ruin a perfectly good crystal castles cabinet for a f*cking insurance commercial? And not even one of the good ones!"  *Id.*  Defendants' misappropriation and disparagement of Atari's valuable IP, coupled with the negative consumer reactions that ensued, substantially harmed, if not destroyed, the market for legitimate licensed uses of the Crystal Castles IP, for which Atari is entitled to seek redress.

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In resolving the motion, a court must "accept[] well-pled facts as true and view[] them in the light most favorable to the plaintiff."  *Id.* (quoting *Walker v. Beaumont Indep. Sch.*

*Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

<u>**ARGUMENT**</u>

**I.      Atari States a Claim for Copyright Infringement**

To state a claim for copyright infringement, Atari is required to allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Contrary to Defendants' position, there is no "heightened pleading standard in cases of alleged copyright infringement." *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 965 (N.D. Tex. 2006). All that is required is that Defendants receive "sufficient notice of the basis of Plaintiffs' complaint for copyright infringement," which the Complaint unquestionably provides. *Id.*

Defendants do not contest that Atari has pleaded its ownership of the Crystal Castles copyrights at issue, Compl. ¶ 2, the records of which are attached to the Complaint. *See* ECF No. 1-1. Defendants do, however, argue that Atari has not alleged the "constituent elements" of the copyrights and that the Complaint is "silent about what creative material is included within [the] protective scope" of the copyrights. Mot. 5-6. That assertion is false. In addition to the information provided by the Crystal Castles registrations attached to the Complaint, Atari specifically alleged that the copyrighted works "include the Crystal Castles cabinet 'wrap,' the underlying software and cassette tapes associated with the Crystal Castles game, and the artistic depictions of the characters therein (such as Bentley Bear)." Compl. ¶ 2. Further, Atari attached images of the visual elements covered by its Crystal Castles copyright registrations, including images of the Crystal Castles cabinet wrap and the Bentley Bear character. *See* Compl. ¶ 22; *see also* ECF No. 1-2. Accordingly, Atari has provided Defendants sufficient notice of the basis of Atari's claim for copyright infringement.

Defendants next argue that Atari has not alleged how their Advertisement infringed Atari's copyrights.  Mot. at 6.  This too is false.  Throughout the Complaint, Atari describes how Defendants infringed its Crystal Castles copyrights.  *See, e.g.*, Compl. ¶ 31 ("The center of nearly every video frame prominently features the Crystal Castles arcade cabinet, with Crystal Castle's characters and scenes showcased across the front and side of the six-foot tall cabinet."); *id.* ¶ 32 ("Defendants' infringing videos also placed Atari and its works in a bad light, including when the "Jake from State Farm" character hits the front of the cabinet—right on Atari IP"); *id.* ¶ 33 ("While they made a half-hearted attempt to cover the mark and name Crystal Castles that appears at the top of the cabinet, they did not obscure any of the other Atari intellectual property that covers the cabinet.").  Indeed, given that the exact same Atari's Crystal Castles wrap and Bentley Bear character (ECF No. 1-2) appear front and center in Defendants' Advertisement (ECF No. 26), there can be no real confusion as to what elements of Atari's copyrights were infringed by Defendants.  And, to the extent Defendants challenge whether the Advertisement could have violated a particular Crystal Castles registration, they raise factual disputes that are not appropriate at the motion to dismiss stage.

In summary, the Complaint alleges (1) Atari's valid ownership of the copyrights; (2) the creative works protected by those copyrights; and (3) the ways in which Defendants infringed those copyrights by copying their "constituent elements."  Defendants have cited no authority suggesting that Atari need do anything more than what it has done in the Complaint.[2]

## II.    Defendants' Use Was Not *De Minimis*

Defendants argue that Atari's copyright claims must be dismissed because their

---

[2] Defendants' reliance on *Compaq Computer Corp. v. Ergonome Inc*., 387 F.3d 403 (5th Cir. 2004) is misplaced as *Compaq* analyzed a motion for judgment as a matter of law following a jury trial, not a motion to dismiss.

unauthorized use of Atari's copyrighted material was purportedly *de minimis*.  Mot. at 6.

"To establish that an infringement is quantitatively de minimis and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'" *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 639 (S.D. Tex. 2007) (quoting *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998)). Defendants' use of Atari's copyrighted material is not "so trivial" that they can avoid the legal consequences of their misappropriation.  And, regardless, Defendants' affirmative defense is not appropriately resolved at the motion to dismiss stage.  *See Compaq Computer Corp. v. Ergonome, Inc.*, 137 F. Supp. 2d 768, 779 (S.D. Tex. 2001) (finding the "the de minimis issue, and the question of 'substantial similarity' that underlies it, to be one for the trier of fact"); *VMG Salsoul, LLC v. Ciccone*, 2013 WL 12136515, at *3 (C.D. Cal. Jan. 29, 2013) (finding the issue of *de minimis* use "better suited for summary judgment" than a motion to dismiss).

Defendants argue that their use of the copyrighted material was *de minimis* because "[i]ts appearance is fleeting, lasting for a total of four seconds."  Mot. at 9.  Defendants' misleading characterizations aside, what Defendants fail to mention is that the while the Advertisement itself had a short duration, the infringing material was present on screen for the *entirety* of the substantive portion of the Advertisement, which clearly cannot constitute *de minimis* use.  *See* ECF No. 26 (depicting Atari's intellectual property for four seconds and the State Farm logo for one second).[3] The *de minimis* use inquiry must be a relative one, comparing the length of the allegedly infringing material to the work as a whole.  For example, in *Dyer v. V.P. Recs. Retail Outlet, Inc.*, 2008 WL

---

[3] Ironically, to find *de minimis* use, the Court need look no further than Defendants' own use of the State Farm logo, which appears briefly in the final second of the advertisement.

2876494, at *4 (S.D.N.Y. July 24, 2008), the court found that although the infringing material was only visible for three seconds of a one-minute video, those three seconds constituted 5% of the infringing work.  Therefore, the court found that the infringing use, albeit brief, could not be *de minimis* when viewed against the length of the infringing work as a whole.  *Id.*; *see also Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, 2020 WL 5739138, at *8 (S.D. Tex. Sept. 24, 2020) (noting that where the copied material constituted one-third of the infringing work, such use was "significantly above the level of 'trivial'").  Here, Atari's copyrighted material appears front and center in roughly 80% of the infringing work, which far exceeds the 5% use found too great to be *de minimis* in *Dyer*.

Even if the *de minimis* inquiry did not view the alleged misappropriation relative to the total work, courts have still found that uses of short duration are not *de minimis* as a rule.  Multiple courts have found that uses of an even shorter duration were not *de minimis* as a matter of law.  *See Hirsch v. CBS Broad. Inc.*, 2017 WL 3393845, at *5 (S.D.N.Y. Aug. 4, 2017) ("To be sure, a finder of fact must also consider the length of time the copied work is observable in the allegedly infringing work—here, roughly two seconds.  But the Court is not aware of any authority that such a brief period alone defeats, as a matter of law, a finding of substantial similarity."); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F. Supp. 2d 1, 46 (S.D.N.Y. 2001) (finding that an infringing use of "three seconds or less" was not *de minimis* where the infringing material "appear[ed] prominently" and was "plainly observable"), *remanded on other grounds*, 277 F.3d 253 (2d Cir. 2002).

Further, "use is de minimis only if the average audience would not recognize the appropriation."  *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878 (9th Cir. 2016).  Contrary to Defendants' assertion, it is clear from the allegations in the Complaint that viewers recognized

8

Defendants' misappropriation of Atari's intellectual property in the Advertisement. The very same demographic and video game enthusiasts that State Farm intended to attract with the Gamerhood campaign took to social media and online forums to express their disappointment with the Advertisement and the misappropriation of the Crystal Castles material they observed being used in the Advertisement. *See, e.g.,* Compl. ¶ 37 ("I recognize the machine [Jake from State Farm] hit. That's a crystal castles machine."). Despite Defendants' attempts to conceal their infringement by modifying the Crytal Castles cabinet wrap, Atari's intellectual property was present long enough and in a prominent enough focus to still be recognized in Defendants' Advertisement, thereby defeating any contention its use was *de minimis.* For example, one user wrote, "Why ruin a perfectly good crystal castles cabinet for a f*cking insurance commercial? And not even one of the good ones!" and another asked, "You think a bastardized Crystal Castles cabinet is going to make you seem cool to gamers?" *Id.* Clearly, the Advertisement's audience saw through Defendants' cynical appropriation and recognized Atari's intellectual property despite Defendants' attempt to claim now that the use was *de minimis.*

Defendants cite multiple cases in support of their argument that their use of the Crystal Castles copyrights was *de minimis*; however, all of these cases are distinguishable and counsel against dismissal. Defendants first rely on *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625 (S.D.N.Y. 2008). But in *Gottlieb*, the copyrighted pinball machine in question appeared in one scene of a more than two-hour long movie and did so "sporadically, for no more than a few seconds at a time." *Id.* at 623. And the copyrighted pinball machine was "never mentioned and play[ed] no role in the plot." *Id.*

Similarly, Defendants cite *Kelley v. Morning Bee*, 2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) as an example of a case dismissed at the pleading stage because the use of the photographs

at issue was *de minimis*.  In *Kelley*, the copyrighted photographs appeared for fifteen seconds in a documentary with a runtime of two hours and twenty minutes.  The court there noted that the photographs appeared "in the background," "poorly lit," "out of focus," and "largely obstructed." *Id.* at *6.

And finally, Defendants point to *LMNOPI v. XYZ Films, LLC*, 449 F. Supp. 3d 86, 91–92 (E.D.N.Y. 2020) to support their *de minimis* use argument.  Defendants accurately describe the court's findings in that case, noting, "The court disagreed with the plaintiff's characterization, observing that the mural appeared fleetingly, only in the background, and that a truck and an actress partially obscured the view of the mural."  Mot. at 7.  But it is unclear how Defendants believe that these findings support their own *de minimis* arguments.  The use of the copyrighted material in *LMNOPI* is distinct in every way from the Defendants' appropriation of Atari's copyrights here.  The Crystal Castles material appears for nearly the entirety of the commercial, at the center of frame, in clear focus, and is readily recognizable.

To bolster their weak *de minimis* use argument, Defendants mischaracterize the copyrighted material as an "ancillary feature," claim that the focus of the Advertisement is the "interaction between the actress and Jake from State Farm," and suggest that the Crystal Castles material "plays no role in the plot" of the Advertisement.  Mot. at 9.  But simply viewing the Advertisement tells an altogether different story, the inferences of which must be viewed in Atari's favor at the pleading stage.  To that end, there is no dialogue between Jake from State Farm and the actress, and the action of the Advertisement centers solely around the Crystal Castles cabinet, which is prominently featured, not out of focus or blurred, for the entirety of the commercial.  Stated plainly, there would be no Advertisement but for Defendants' infringing use of Atari's intellectual property.  Defendants' infringement was essential to the purpose of the Advertisement

10

and the Gamerhood campaign in general, which was intended to connect with a younger audience who would recognize and respect Atari's storied intellectual property.

### III.     Defendants' Misappropriation of Atari's IP Was Not Fair Use.

Defendants contend that Atari's copyright claim should be dismissed because their misappropriation of Atari's intellectual property in the Advertisement was fair use.  Mot. at 9.

In the copyright context, fair use is an affirmative defense that raises "a mixed question of law and fact."  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).  And "[i]t is 'well-established' that mixed questions of law and fact are not decided on a motion to dismiss."  *Dow Jones & Co., Inc. v. Harris*, 2023 WL 417503, at \*4 (W.D. Tex. Jan. 24, 2023), *report and recommendation approved*, 2023 WL 3035398 (W.D. Tex. Mar. 1, 2023) (citations omitted).  As such, this Court should not engage in a fair use analysis at this stage of the case. *Viral DRM, LLC v. Frank Kent Country, LLC*, 2023 WL 5284844, at \*2 (N.D. Tex. Aug. 16, 2023) (defendant not entitled to dismissal based on fair use unless plaintiff "has pleaded itself out of court by admitting to all of the elements of the defense").  Here, Defendants repeatedly raise arguments based on their own characterizations that are outside of the pleadings and should not be considered.  *See, e.g.*, Mot. at 11 (arguing that the imagery on the wrap was created for specific purpose and characterizing what Defendants "set out to achieve" with their infringing Advertisement).  But even if the fair use analysis is undertaken from the pleadings alone without the benefit of discovery, it is clear that Defendants' undisputedly commercial and non-transformative use of Atari's copyrighted material was not fair.

Under Section 107 of the Copyright Act, "courts consider four non-exclusive factors when determining whether the use of a copyrighted work is 'fair use:' (1) 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational

purposes;' (2) 'the nature of the copyrighted work;' (3) 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole;' and (4) 'the effect of the use upon the potential market for or value of the copyrighted work.'" *Est. of Barré v. Carter*, 272 F. Supp. 3d 906, 915 (E.D. La. 2017) (quoting 17 U.S.C. §107).

*All* the statutory fair use factors cut against a finding of fair use.  Most critically, Defendants' fair use arguments are undercut by the fact that their misappropriation of the Crystal Castles copyrights was patently commercial and undertaken solely for the purpose of cashing in on Atari's intellectual property and goodwill.  *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 537–38 (5th Cir. 1994) ("Conspicuously absent from the list of fair uses is use for commercial purposes."); *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, 2023 WL 8721435, at *17 (N.D. Tex. Dec. 17, 2023) (same).

## A.  The Purpose and Character of the Use

"The first factor in a fair use enquiry is 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (quoting 17 U.S.C. §107).  "The central purpose of this investigation is to see . . . whether the new work merely supersedes the objects of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative." *Id.* at 579 (cleaned up).  For purposes of the first fair use factor, an allegedly infringing use in a commercial context is given considerably less leeway even if it is "transformative."  *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 537 (2023) ("The undisputed commercial character of [defendant's] use, though not dispositive, 'tends to weigh against a finding of fair use.'" (quoting *Harper & Row*,

471 U.S. 539, 562 (1985)); *Campbell*, 510 U.S. at 585 ("The use, for example, of a copyrighted work to advertise a product, even in a parody, will be entitled to less indulgence under the first factor of the fair use enquiry than the sale of a parody for its own sake.").

Here, Defendants argue that the use of the copyrighted work was "transformative" *because* it was adapted to a self-serving, commercial use.  Defendants note, "The purpose and character of Defendant's limited use of the Wrap in the Video are entirely transformative . . . [T]he Video's **ultimate objective was the marketing of insurance products**, as part of a broader Campaign, designed invoke [*sic*] video games generally as medium to connect with younger consumers, with the identity of any particular game referenced in the Video unimportant and incidental to that purpose."  Mot. at 11–12 (emphasis added).  This argument gets the analysis exactly backwards. A transformative use—*i.e.*, one that adds a "new expression, meaning, or message"—may be fair *even if* it is commercial, but a defendant cannot rely on the commercialization of another's copyrighted work as the way to supply that "new expression, meaning, or message."  If it were otherwise, any misappropriation of a copyright for a commercial purpose would be "transformative" under the first factor, neutering the protections of copyright.  Of course, that is not the law.  Because the only "transformation" that Defendants can point to is their own commercial use of Atari's intellectual property, there is no "transformation" at all.  Defendants' blatantly commercial use leans heavily against a finding of fair use under the first factor of the test. *See Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 323 (5th Cir. 2022) ("If expression is not transformative, 'other factors, like the extent of its commerciality, loom larger' and require a stronger showing.") (quoting *Campbell*, 510 U.S. at 580); *see also Viral DRM, LLC*, 2023 WL 5284844, at *4 (rejecting "mixed purposes" defense and finding commercial use where defendant "st[ood] to profit from exploitation" of the copyright in an advertisement "without

'paying the customary price' for using it for such commercial purposes") (citation omitted).

Under the first factor, courts also determine "what conduct by a defendant might weaken a claim to fair use." *Peteski Prods., Inc. v. Rothman*, 264 F. Supp. 3d 731, 736 (E.D. Tex. 2017). The Supreme Court has noted that "[f]air use distinguishes between a true scholar and a chiseler who infringes a work for personal profit." *Harper & Row*, 471 U.S. at 563; *see also NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004) ("*Harper & Row* directs courts to consider a defendant's bad faith in applying the first statutory factor."). Defendants here acted in bad faith and for their own commercial gain when misappropriating Atari's IP. Defendants had three options before them, all of which they rejected in favor of infringement: (1) license the Crystal Castles copyrights; (2) totally obscure all of the Atari IP visible in the Advertisement; or (3) use their own creativity to develop and fabricate an entirely original arcade cabinet from scratch for use in the Advertisement. Instead, they made haphazard attempts to "disguise" the Crystal Castles cabinet while still attempting to capitalize on its cultural significance and notoriety. *See also Los Angeles News Serv. v. KCAL–TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) ("'[T]he propriety of the defendant's conduct' is relevant to the character of the use at least to the extent that [the defendant] may knowingly have exploited a purloined work for free that could have been obtained for a fee.") (quoting *Harper & Row*, 471 U.S. at 562). Defendants' effort to conceal their infringement at a minimum raises an inference of bad faith as there would have been no reason for Defendants to manipulate any portion of the cabinet wrap had they actually believed they were engaged in fair use of the Crystal Castles copyrights.

Defendants acted in bad faith, and their use of the copyrighted material was not transformative. This factor weighs heavily in favor of Atari.

### B.   *The Nature of the Copyrighted Work*

Courts look to "the nature of the copyrighted work" as the second factor in the fair use analysis.  17 U.S.C. § 107(2).  The relevant inquiry is "whether the work has been appropriated for its 'expressive elements,' rather than to disseminate 'the underlying facts.'"  *Bell*, 27 F.4th at 323.  This factor goes to Atari.  Defendants concede that the misappropriated copyrighted elements are "creative in nature," and Defendants were undisputably making use of the "expressive elements" of the Crystal Castles copyrights.  Defendants note that in *Bell* the Fifth Circuit still found that the defendants' use of the copyrighted material was fair even where this second factor favored the copyright holder.  But the *Bell* court distinguished that the infringed work was only "somewhat creative" and found that the copyrighted text "largely consist[ed] of well-worn truisms."  *Id.*

As Defendants concede, the copyrighted materials at issue are creative works.  Therefore, this factor weighs in Atari's favor.

### C.   *The Amount and Substantiality of the Portions Used*

The third fair-use factor goes to "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  Courts "consider whether the amount copied is either a quantitatively or qualitatively significant part of the original."  *Bell*, 27 F.4th at 324.

Defendants retread the same arguments they employed to support their *de minimis* argument.  Notably, Defendants once again claim that "the bulk of the Wrap" was "obscured during the clip's entire duration."  Again, this statement is false.  The Crystal Castles cabinet is at the center of nearly every frame of the Advertisement, is easily recognizable, and its creative elements are reproduced in exactly the same form.

15

Defendants further argue that this factor weighs in their favor because they infringed only the highly recognizable visual components of the work and not the "computer files for an entire video game."  Mot at 13.  But "[e]ven a relatively small amount of copying can weigh against fair use if it captures 'the heart' of the work."  *Bell*, 27 F.4th at 324 (quoting *Harper & Row*, 471 U.S. at 565).  Defendants used the parts of the Crystal Castles copyrights that are most recognizable (Compl. ¶ 37) and from which they could gain the most benefit.  And, as is clear from the reaction to the Advertisement online, notwithstanding Defendants' contention that elements of Atari's IP were "unidentifiable," Mot. at 13, the public recognized the Atari IP that was heavily featured in the Advertisement.  Compl. ¶ 37.

Thus, Defendants appropriated the "heart" of Atari's IP.  The third factor weighs in favor of Atari.

### D.  The Effect on the Market for Atari's Copyright

"The fourth factor examines 'the effect of the use' on the market for and value of the copyrighted work."  *Bell*, 27 F.4th at 324 (quoting 17 U.S.C. § 107(4)).  "Under this factor, courts consider actual harm but, more broadly, whether widespread use of the work in the same infringing fashion would result in a substantially adverse impact on the potential market for the original work and any derivatives.  This fourth factor is undoubtedly the single most important element of fair use."  *Viral DRM, LLC*, 2023 WL 5284844, at *4 (cleaned up).

Defendants argue, based on their own *ipse dixit*, that "it is inconceivable that Defendants' limited use of the Wrap could impact the market for a 1983 video game."  Mot. at 14.  But as Defendants surely know—even if they feign ignorance—the market in question is not limited to the Wrap or even for Crystal Castles itself, but the licensing opportunities belonging to Atari as the owner of a large portfolio of valuable intellectual property, including the Crystal Castles

copyrights.  Indeed, Atari alleges as much in the Complaint:  "Atari has an active licensing business through which Atari has extended its brand into other media, advertising, merchandising, and publishing categories."  Compl. ¶¶ 23–25 (describing the market for licensing opportunities for Atari's IP, including Crystal Castles).  And Atari specifically alleges that Defendants failed to obtain a license for their use of the copyrighted materials.  *Id.* ¶¶ 42–44.

Courts routinely consider licensing markets and opportunities in the context of the fourth fair use factor.  *See Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 49 (2d Cir. 2021) (finding that the fourth fair use factor favored rightsholder as use by the alleged infringer threatened licensing markets), *aff'd*, 598 U.S. 508 (2023); *Viral DRM, LLC*, 2023 WL 5284844, at *4 ("From the facts alleged in the amended complaint, the court can draw the reasonable inference that widespread use of the Video akin to Frank Kent's would undermine Viral's licensing scheme. . . . .  At the motion to dismiss stage, these allegations are sufficient to enable the court to draw the reasonable inference that Frank Kent's use harmed the market for the Video."); *Est. of Barré*, 272 F. Supp. 3d at 938 ("Section 106 of the Copyright Act provides that a copyright holder has the exclusive right to 'authorize' certain uses of the copyrighted material. . . . this includes the right to 'demand a royalty for licensing others to use its copyrighted work.'") (quoting *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 929 (2d Cir. 1994)).

If potential licensees of Atari IP like Defendants are allowed to circumvent the license process without any consequences, then *all* potential licensees would simply misappropriate copyrighted material as Defendants have done here and Atari's licensing market would suffer substantial adverse impacts.  *See Campbell*, 510 U.S. at 590 (noting that the fourth fair use factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in

by the defendant would result in a substantially adverse impact on the potential market")
(quotations omitted).  Further, by presenting Atari's IP in a negative light and falsely associating
Atari with State Farm's insurance business, which generated severe negative reactions among
consumers, Defendants have effectively destroyed Atari's ability to license the Crystal Castles
intellectual property for use in future advertising.

Defendants claim that Atari "is not entitled to a licensing fee for a work that otherwise
qualifies for the fair use defense."  Mot. at 14 (quoting *Leibovitz v. Paramount Pictures Corp.*, 137
F.3d 109, 117 (2d Cir. 1998)).  But that logic assumes the conclusion—*i.e.*, Defendants did not
harm Atari's licensing market because the use of the work is fair.  However, the use of the work
*cannot* be fair where Defendants took without consent or compensation a "potential commercial
opportunity[y] that rightly belong[s] to plaintiff."  4 Nimmer on Copyright § 13F.08.

Accordingly, the fourth factor also weighs in favor of Atari.[4]

### IV.   Atari States a Claim for Unjust Enrichment

Turning from Atari's copyright claim, Defendants argue that Atari's unjust enrichment
claim must be dismissed for three reasons.  First, that Texas law does not recognize a standalone
unjust enrichment claim.  Second, that Defendants received no benefit at Atari's expense.  And

---

[4] The authority that Defendants cite is not to the contrary.  In *Leibovitz v. Paramount Pictures Corp.*, defendant Paramount Pictures parodied photographer Annie Leibowitz's well-known portrait of actress Demi Moore that appeared on the cover of *Vanity Fair* in 1991 for use in the promotional cycle of a slapstick comedy.  Citing to the Supreme Court's decision in *Campbell*, the Second Circuit determined that the threat to the licensing market was minimal because "the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market." *Campbell*, 510 U.S. at 592.  Defendants here do not argue that the Advertisement is a parody of any kind.  And in *Bell*, the Fifth Circuit did not give credibility to plaintiff's licensing argument where the plaintiff's licensing concerns were "purely speculative" and he was "unable to allege that anyone has ever purchased a license" for the copyrighted material at issue. *Bell*, 27 F.4th at 325.  Not so here where Atari has specifically alleged the existence of an "active licensing business."  Compl. ¶ 23.

third, that the claim cannot proceed where there is an adequate remedy at law.  All fail.

First, Defendants argue that Atari's unjust enrichment claim must be dismissed because it is not recognized under Texas law.  But contrary to Defendants' suggestion, courts applying Texas law continue to recognize a claim for unjust enrichment as a standalone cause of action.  "Texas courts recognize unjust enrichment as an independent cause of action . . . .  Unjust enrichment is an implied-contract basis for requiring restitution when it would be unjust to retain benefits received."  *Banion v. Geovera Specialty Ins. Co.*, 2016 WL 7242536, at *3 (S.D. Tex. Dec. 15, 2016) (citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010)); *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (per curiam) (deciding that unjust enrichment claims are barred by a two-year statute of limitations).  Courts have recently recognized claims for unjust enrichment under Texas law *in copyright actions*.  *See Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365 (5th Cir. 2020) (finding that plaintiff's unjust enrichment claim under Texas law could proceed in tandem with federal copyright claim); *HCL Techs. Ltd. v. Atos S.E.*, 2024 WL 1076821 (N.D. Tex. Jan. 31, 2024), *report and recommendation adopted*, 2024 WL 1094697 (N.D. Tex. Mar. 12, 2024); *Erosion Prevention Prod. LLC v. Pave/lock/plus II, LLC*, 2023 WL 9105685, at *6 (S.D. Tex. Nov. 22, 2023).

Arguments to the contrary are semantic.  As the court in *Janvey v. Alguire*, 846 F. Supp. 2d 662 (N.D. Tex. 2011) explained, some Texas courts choose not to recognize a "claim for unjust enrichment as an independent cause of action under Texas law" but choose instead to "read claims for 'unjust enrichment' as pleading an equitable common law claim for money had and received."  *Id.* at 673–74.  But regardless, "the two claims are substantively identical."  *Id.* at 674.  On the one hand, "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits."  *Id.* at 673 (quoting *Texas Integrated Conveyor Sys.,*

19

*Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. 2009)).  On the other hand, "[t]he question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong."  *Id.* at 674.[5]

Second, Defendants argue that Atari's claim fails because Atari conferred no benefit on Defendants at Atari's expense.  "Under Texas law an unjust enrichment claim requires showing that one party 'has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'"  *Digital Drilling Data Sys., L.L.C.*, 965 F.3d at 379 (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).  But as Atari alleges in the Complaint, Defendants were unjustly enriched by appropriating the intellectual property of Atari and benefiting from Atari's goodwill without providing any compensation for that benefit, such as a licensing fee.  Compl. ¶ 52.  Alleging such conduct satisfies the pleading requirements for unjust enrichment.  *See HCL Techs. Ltd.*, 2024 WL 1076821 (allowing unjust enrichment claims to proceed because defendant continued to use copyrighted software "without following proper licensing procedures").[6]

---

[5] To the extent that this Court takes the view that a standalone claim for unjust enrichment cannot be maintained under Texas law, Atari respectfully requests that the Court construe the claim as one for money had and received.  *See Taylor v. Trevino*, 569 F. Supp. 3d 414, 436 (N.D. Tex. 2021) ("Additionally, a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action.  It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which belongs to the plaintiff.") (quotations and citations omitted) (Fitzwater, J.).

[6] Defendants cite *Greathouse v. Cap. Plus Fin. LLC*, 690 F. Supp. 3d 610, 641 (N.D. Tex. 2023) in support of their position, but that authority is inapposite.  There, a class of plaintiffs alleged that defendants were unjustly enriched through the processing of government loans—which were never disbursed—under the Paycheck Protection Program instituted in the wake of the COVID-19 pandemic.  The court found that the unjust enrichment claim could not proceed where defendants "were enriched from the fees they obtained from processing loan applications," which "came directly from the government, not from Plaintiffs."  Here, there is no dispute that the benefit conferred on Defendants—*i.e.*, Atari's intellectual property and goodwill—came directly from Atari.

Finally, Defendants argue that Atari's claim for unjust enrichment must fail because there is an adequate remedy at law. Mot. at 16. But Atari lacks an adequate remedy at law where there is no contract covering the subject of the dispute. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("[T]here can be no recovery for unjust enrichment if the same subject is covered by the express contract.") (cleaned up); *United States v. Medica-Rents Co*., 285 F. Supp. 2d 742, 777 (N.D. Tex. 2003) (allowing unjust enrichment claim to proceed in absence of express contract). And, as explained above, courts routinely allow copyright claims to proceed alongside unjust enrichment claims. *Digital Drilling Data Sys., L.L.C. Inc*., 965 F.3d 365; *Erosion Prevention Prod. LLC*, 2023 WL 9105685.

## V.        Atari States a Claim for Product Disparagement

Defendants contend that Atari fails to allege a product disparagement claim because of a failure to allege (1) the existence of a defamatory statement; (2) malice; or (3) special damages.

On the first point, Defendants' primary argument is that there is no *statement* at issue because the alleged disparagement in the Advertisement took the form of nonverbal action. But Defendants cite no law suggesting that nonverbal conduct cannot constitute defamation as a rule, and courts have acknowledged that non-verbal conduct can be defamatory as a matter of law. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 878 n.5 (D.C. 1998) (noting that "[a]ctionable defamation is not necessarily restricted to verbal conduct" and finding that conduct such as the inactivation of an employee's access key was not non-defamatory as a matter of law); *Krochalis v. Ins. Co. of N. Am*., 629 F. Supp. 1360, 1368 (E.D. Pa. 1985) (noting that defamation can include "nonverbal as well as verbal communication"); *Bonkowski v. Arlan's Dep't Store,* 174 N.W.2d 765, 767 (Mich. 1970) ("dramatic pantomime" was capable of defamatory meaning). This is not surprising; the law governs all sorts of nonverbal statements and speech.

*See, e.g.*, *United States v. Montes-Salas*, 669 F.3d 240, 251 (5th Cir. 2012) ("for the purposes of the hearsay rule, "[a] 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.") (quoting Fed. R. Evid. 801(a)); *Steadman v. Texas Rangers*, 179 F.3d 360, 367 (5th Cir. 1999) ("'Speech' . . . extends to many activities that are by their very nature non-verbal: an artist's canvas, a musician's instrumental composition, and a protester's silent picket of an offending entity are all examples of protected, non-verbal 'speech.'").

Defendants fall back on claiming that their disparagement of Atari's products is just a *joke*—a comedy routine played up for laughs. But that assertion cannot defeat Atari's claims as a matter of law at the motion to dismiss stage, particularly given the well-pleaded allegations establishing that Atari's fans did not find anything funny about the Advertisement. *See Robinson v. Radio One, Inc.*, 695 F. Supp. 2d 425, 430 (N.D. Tex. 2010) (rejecting "proposition that any defamation claimed to be satire is immune" from liability); *Garcia v. MAC Equip., Inc.*, 2011 WL 4345205, at *14 (S.D. Tex. Sept. 15, 2011) ("Whether the remarks were actually understood as harmless jokes or as defamatory statements is for the trier of fact to determine.").

Next, Defendants argue that Atari has failed to plead actual malice. Under Texas law, a defendant acts with malice for purposes of a business disparagement claim if "he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion." *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 398 n.4 (W.D. Tex. 2023). The Complaint makes clear that Defendants acted with the requisite "reckless disregard" or "ill will" to meet the threshold of malice.

To review: Defendants (1) used valuable copyrighted material belonging to Atari without providing any compensation; (2) made Atari's intellectual property—which many viewers

recognized in the Advertisement—as the butt of their "joke"; and (3) did so all for the sake of their own profit.  Indeed, Defendants' plan to disparage Atari's IP was predicated upon an interference with Atari's economic interests by failing to license the Crystal Castles copyrights in the first instance.  And while Defendants claim that they were simply repeating "nothing more than the truism that old technology sometimes malfunctions," it is clear that no investigation was undertaken to determine whether the technology *at issue*—and which forms an important part of a legendary company's worldwide brand—"sometimes malfunctions."  Mot. at 19.  Finally, the fact that this was all done to line Defendants' pockets is an important factor weighing in favor of Atari.  *Bass v. United Dev. Funding, L.P.*, 2019 WL 3940976, at *21 (Tex. App. Aug. 21, 2019) ("While profit motive, alone, is not sufficient to establish actual malice, it is a relevant factor to be considered together with other factors in a determination of actual malice.").

Atari has also pleaded special damages.  The Advertisement created a false association between State Farm and Atari.  Following the release of the Advertisement, the reaction from video game enthusiasts online was swift and unsparing.  They made known their dissatisfaction with the use of the Crystal Castles IP.  *See* Compl. ¶ 37 (quoting online reactions to the Advertisement: "You think a bastardized Crystal Castles cabinet is going to make you seem cool to gamers? Think again."; "Why ruin a perfectly good crystal castles cabinet for a f*cking insurance commercial? And not even one of the good ones!"; "There is so much wrong with what I just witnessed here."; "Unbelievably out of touch.").  Defendants argue that the negative reaction was directed toward State Farm, but the viewing public likely believed that Atari had indeed licensed its IP to State Farm for use in the Advertisement, as it should have done in the ordinary course. Compl. ¶ 35. The online derision and disappointment was therefore also directed at Atari.  This specific reputational impact led Atari to lose other valuable licensing and business opportunities.  Further, as a direct

result of Defendants' choice to disparage Atari in the Advertisement, Atari lost a valuable licensing opportunity *with Defendants*.  Had Defendants approached Atari for a license, Atari could have worked together with Defendants to determine whether a commercial could be created that would accomplish their respective goals of connecting with a younger demographic *and* placing the Atari brand in a positive light.  However, Defendants knew that Atari would not consent to the use of its IP in the manner that Defendants planned to use it, so instead they chose to skirt around proper licensing mechanisms in favor of making the Advertisement as they envisioned, all of which caused substantial harm to Atari.

## VI.    Atari States a Claim for Unfair Competition

Defendants argue that Atari did not state a claim for unfair competition because Atari failed to state the underlying claim of business disparagement and because Atari does not allege any interference with Atari's ability to conduct its business.

As set forth above, Atari states a claim for the underlying tort of business disparagement. *See* Section V, *supra*.  Additionally, Atari specifically alleges a loss of goodwill.  The Advertisement sparked immediate backlash and ridicule online, which translated to a loss of Atari's goodwill as the Advertisement's misappropriation of the Atari IP implied a false association between State Farm and Atari.  *See Spear Mktg., Inc. v. BancorpSouth Bank*, 2013 WL 3297593, at *7 (N.D. Tex. July 1, 2013) (denying motion to dismiss unfair competition claim where plaintiffs had alleged a loss of goodwill).

## VII.    Atari States a Claim for False Information and Advertising

Finally, Defendants argue that Atari has not stated a claim for false information and advertising under Tex. Ins. Code § 541.052 against State Farm.

"Section 542.052 prohibits false information in advertising by prohibiting: 'mak[ing],

24

publish[ing], disseminat[ing], circulat[ing], or plac[ing] before the public . . . an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business.'" *Chamberlin v. GEICO Indem. Co*., 2020 WL 5922081, at *3 (N.D. Tex. May 27, 2020).  There is no question that the representations in question were made in an advertisement.  And further, Defendants made at least two "untrue, deceptive, or misleading assertion[s], representation[s], or statement[s]."  First, there are the disparaging assertions about Atari's products detailed above.  Second, through the use of Atari IP, there is the implicit assertion that State Farm has some affiliation with Atari.  At the very least, the second misrepresentation is "regarding the business of insurance" as it gestures toward a non-existent relationship between State Farm, an insurer, and another business entity.

Defendants claim that the Advertisement does not convey an affiliation between State Farm and Atari because "Defendants changed the arcade cabinet's marquee and video screen of the Cabinet to obfuscate any reference to Atari and Crystal Castles."  Once again, the crude attempts they made to disguise the Crystal Castles cabinet were not successful as demonstrated by the online reaction and identification of the Crystal Castles cabinet by viewers.  Compl. ¶ 37.  Tellingly, Defendants do not cite a single case in support of dismissing this claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the court should deny Defendants' motion to dismiss in its entirety.

Dated: July 9, 2024                              Respectfully submitted,

                                                 By: */s/ Bryan A. Giribaldo*

                                                 **PARDELL, KRUZYK & GIRIBALDO, PLLC**

                                                 Bryan A. Giribaldo
                                                 Texas Bar No. 24124547
                                                 7500 Rialto Blvd., Suite 1-250
                                                 Austin, Texas 78735
                                                 Tel: (561) 726-8444
                                                 bgiribaldo@pkglegal.com

                                                 **BOIES SCHILLER FLEXNER LLP**

                                                 James W. Lee*
                                                 Laselve E. Harrison*
                                                 Robert G. Keefe*
                                                 100 SE 2nd St., Suite 2800
                                                 Miami, FL 33131
                                                 Tel: (305) 359-8400
                                                 Fax: (305) 539-1307
                                                 jwlee@bsfllp.com
                                                 lharrison@bsfllp.com
                                                 rkeefe@bsfllp.com

                                                 Katie Kavanaugh*
                                                 2029 Century Park East, 1520N
                                                 Los Angeles, CA 90067
                                                 Tel: (213) 629-9040
                                                 Fax: (213) 629-9022
                                                 kkavanaugh@bsfllp.com

                                                 Jeffrey P Waldron*
                                                 55 Hudson Yards
                                                 New York, NY 10001
                                                 Tel: (212) 446-2300
                                                 Fax: (212) 446-2350
                                                 jwaldron@bsfllp.com

                                                 * Admitted *pro hac vice*

                                                 *Attorneys for Plaintiff*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2024, I caused the foregoing to be filed electronically with the Clerk of Court and to be served via the CM/ECF Filing System upon all counsel of record.

By: *_/s/ Bryan A. Giribaldo_*
Bryan A. Giribaldo