# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., <br><br> Defendants. | Case No. 3:24-cv-00704-D |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, THE MARKETING ARM, INC., AND AUGUST PASK PARTNERS LLC d/b/a HUDSON EDITORIAL'S MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT...........................................................................................................................1

    A. Atari's Copyright Act Claim Fails. ............................................................................1

        1. The Complaint Fails to Plausibly Allege Infringement of Atari's *Crystal Castles* Copyrights. ...........................................................................1

        2. The Copyright Claim Fails Under the *De Minimis* Use Doctrine................3

        3. The Copyright Claim Fails Under the Fair Use Doctrine. ...........................4

            a. The Purpose and Character of the Use............................................ 4

            b. The Nature of the Copyrighted Work. ............................................ 5

            c. The Amount and Substantiality of the Portion Used. ..................... 6

            d. The Effect on the Market for Atari's Copyright. ............................ 6

    B. Atari Fails to State a Claim for Unjust Enrichment. .................................................7

    C. Atari Fails to State a Claim for Business Disparagement.........................................8

    D. Atari Fails to State a Claim for Unfair Competition.................................................9

    E. Atari Fails to State a Claim for False Information and Advertising. .....................10

III. CONCLUSION......................................................................................................................10

## I. INTRODUCTION

Atari contends that the incidental and accidental use of part of an arcade console Wrap for an obscure 40-year-old arcade game for four seconds in the background of an online Video advertisement violates a laundry list of federal and state statutes, and entitles it to significant compensatory and punitive damages, injunctive relief, and attorneys' fees. This is not the law. While Atari hyperbolizes about "bad faith" and the alleged destruction of some purported licensing market, it fails to allege the most foundational information about what material its copyright Registrations cover, and how Defendants allegedly infringed each. Atari's vague allegations deny adequate notice to Defendants regarding what exactly it is contending, and prevent the Court from assessing whether the use gives rise to a valid claim—which it does not.

Even assuming Atari plausibly alleged infringement of all three copyrights identified in the Complaint, the use of the Wrap is both a *de minimis* use and protected by the fair-use doctrine. Unsatisfied with mere copyright claims, Atari also asserts numerous state-law claims, from business disparagement to false insurance advertising. These causes of action have no application to the facts here and each fails as a matter of law.

## II. ARGUMENT

### A. Atari's Copyright Act Claim Fails.

#### 1. The Complaint Fails to Plausibly Allege Infringement of Atari's *Crystal Castles* Copyrights.

Atari must "plead sufficient facts to show … copying of constituent elements that are original" to **each** of its **three** alleged copyrighted works, including "allegations of both factual copying and substantial similarity." *Liccardi v. Shorr*, 2023 WL 9102232, \*2 (N.D. Tex. 2023), *F&R adopted*, 2024 WL 57319 (N.D. Tex. 2024) (dismissing copyright claim). "It is the plaintiff's burden to initially identify specific, objective elements." *Muromura v. Rubin Postaer & Assocs.*,

1

2015 WL 1728324, *2 (C.D. Cal. 2015).  Courts routinely dismiss copyright claims as implausible where the plaintiff fails to identify the copied elements of a registered copyright.  *See, e.g.*, *id.* at *4; *Braham v. Sony/ATV Music Pub'g*, 2015 WL 7074571, *3 (C.D. Cal. 2015) ("Braham has not *plausibly* identified 'constituent elements' that he alleges have been copied"); *Bungie, Inc. v. Aimjunkies.com*, 2022 WL 1239906, *2 (W.D. Wash. 2022) (plaintiff "has not pleaded sufficient facts to plausibly allege that [defendants] copied constituent elements").

Atari fails to identify the "constituent elements" of its works, so necessarily cannot allege how Defendants copied those elements.  Mot. at 5-6.  Atari must allege that the geometric pattern shown on the Wrap is a "constituent element" of ***each*** registered work—analyzed ***separately***, not as a collective whole.  Atari's Registrations are silent on this issue, *see id.*, and Atari does not attach any of the three registered works to the Complaint.  Atari never explains, for example, how the Wrap graphics could be an element of a "printout" of a "computer file" (the subject of the '532 Registration).  *Id.*  If that "printout" is nothing more than written software code, there is no possibility of actionable copying.  Atari's refusal to provide this basic information denies Defendants notice of the claims, and prevents the Court from undertaking the kind of basic copying analysis appropriate on a motion to dismiss.  *See, e.g.*, *Liccardi*, 2023 WL 9102232, at *3 ("The court must make a side-by-side comparison of the original and the alleged copy").

Atari claims it provided sufficient notice of its three works' "constituent elements" through "information provided by" its Registrations, but those Registrations say nothing at all about the Wrap or its graphics.  Opp. at 5; Compl., Ex. 1.  Atari also cites a photo-montage of *Crystal Castles* advertisements in the Complaint, Opp. at 5 (citing Compl. ¶ 22), but the Complaint ties no particular image to any particular registered work.  Atari then argues that alleging the Video generally is sufficient at the pleading stage.  Opp. at 6.  Atari misses the point, which is that it is

2

***not possible*** to determine whether the Video copied a "constituent element" of any copyrighted work without first understanding what each work contains. *See* Mot. at 6.

### 2. The Copyright Claim Fails Under the *De Minimis* Use Doctrine.

The Complaint alleges only inactionable *de minimis* use of Atari content because the "average lay observer" would not recognize Atari copyrighted material in the Video. *See* Mot. at 6-9. The most significant features of the cabinet—the marquee title and the video screen—are non-Atari. *Id.* at 8. The only visible Atari content—geometric fragments of the Wrap—is incidental background material, with the Video's focus on the foreground interaction between an actress and the "Jake from State Farm" character. *Id.* at 8-9; *see Kelley v. Morning Bee*, 2023 WL 6276690, *10 (S.D.N.Y. 2023).

***First***, while Atari claims that the *de minimis* question is "not appropriately resolved" on a motion to dismiss, Opp. at 7, courts routinely do so. *See* Mot. at 6-8 (citing cases).[1]

***Second***, Atari claims the use is not *de minimis* because some portion of the Wrap is visible for most of the six-second Video, Opp. at 7-8, but duration is one factor in the overall "average lay observer" inquiry, which views the use in the overall context of the challenged work. Mot. at 6-8. Defendants' argument is that the fleeting, four-second appearance of part of the Wrap in the Video's background, where the focus is on the actors—not any copyrighted work—is overall *de minimis*. Atari simply ignores this argument, instead falsely claiming that the Wrap is "front and center" in the Video. Opp. at 8; Mot., Ex. A.

***Third***, Atari admits that a use is *de minimis* " if the average audience would not recognize the appropriation." Opp. at 8. But the Complaint contains no allegations—and the Opposition no

---

[1] *See also, e.g., See, e.g., Montgomery v. Holland,* 408 F. Supp. 3d 353, 378 (S.D.N.Y. 2019)*, aff'd sub nom. Montgomery v. NBC Television,* 833 F. App'x 361 (2d Cir. 2020) (*de minimis* dismissal)*; TufAmerica, Inc. v. WB Music Corp.*, 67 F. Supp. 3d 590, 598 (S.D.N.Y. 2014) (same).

3

arguments—directed to the "average audience." *See* Mot. at 8-9. Atari instead focuses on alleged comments of a niche group of Atari enthusiasts—its own "fans" (as Atari alleges, Opp. at 22)—and uses those fans as a stand-in for the "average audience." *Id.* at 8-9. Atari alleges no plausible facts suggesting the average viewer of the Video would recognize a fragmentary image on the side of an obscure four-decade-old arcade game cabinet.

**Fourth**, Atari claims that Defendants' supposed "attempts to conceal" their alleged infringement somehow undermine *de minimis* use. Opp. at 9. This makes no sense. After stripping all direct references to Atari, the inadvertently brief use of the Wrap graphics occurred precisely **because** the average person today has no idea that generic-looking geometric graphics from a 40-year-old, out-of-circulation arcade box are copyrighted material (if they are).

**Fifth**, Atari argues that the Wrap is central to the Video, Opp. at 10, but this is verifiably untrue by a cursory review of the Video. Mot., Ex. A. Because the graphics serve no creative function and are incidental to the Video, any generic arcade cabinet could have been used.

### 3. The Copyright Claim Fails Under the Fair Use Doctrine.

#### a. The Purpose and Character of the Use.

There is no real dispute that Defendants' alleged use of copyrighted material was "transformative" in that it has a "purpose and character different" from Atari's original in every respect. Mot. at 10-12. Atari's Wrap imagery was presumably created to entice consumers to play a specific video game in an arcade. State Farm's Video incidentally uses a brief portion of generic-looking graphics allegedly belonging to that game on the side of an arcade game cabinet in an advertisement for insurance products. *Id.* at 11-12. Atari ignores this central argument.

**First**, Atari mischaracterizes Defendants' argument about commercial use. *See* Opp. at 13. Defendants never argued that commercial uses are automatically transformative. *Compare id. with* Mot. at 10-12. Defendants instead argued that their use, **despite** being commercial, was

4

transformative because it was an incidental, background use on a prop, irrelevant to the subject matter for which the prop was used.[2] But Atari designed its Wrap specifically to promote *Crystal Castles* to arcade gamers in the 1980s. The parties' purposes have no relationship of any kind. Atari did not respond to this argument. *See* Opp. at 13-14.

***Second***, Atari argues that Defendants' alleged infringement cannot be transformative because Defendants acted in "bad faith" by not taking steps to avoid infringement. Opp. at 14.[3] But intent says nothing about transformation. There is otherwise no factual allegation suggesting "bad faith." Defendants understood the *Crystal Castles* name and audiovisual content in the game itself was potentially protected—and covered up those elements in the Video—but inadvertently failed to cover the Wrap or realize its design ***might*** be incorporated in a copyright.

### b.    The Nature of the Copyrighted Work.

Atari does not dispute that the second factor "is widely considered the least significant fair-use factor." Opp. at 15; Mot. at 12 (quoting *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 323 (5th Cir. 2022)). Nor does Atari dispute that the *Crystal Castles* arcade game was published decades ago or that courts routinely find fair use regardless of this factor. *Bell*, 27 F.4th at 323, 325-26.

---

[2] Atari admits that a use "may be fair *even if* it is commercial." Opp. at 13 (emphasis in original); *see also, e.g.*, Mot. at 11 ("many common fair uses are indisputably commercial") (quoting *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021)).
[3] Atari mis-cites *Los Angeles News Serv. v. KCAL–TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir. 1997) for the proposition that Defendants' use of the Wrap was not fair because Defendants could have taken steps to avoid infringement. In that case, there was nothing "transformative" about the defendant's verbatim replaying of the plaintiff's copyrighted video. *Id.* And the record in that case was clear that the defendant knew about the plaintiff's copyright and chose to replay a copy of the work anyway, superimposing its logo over the plaintiff's footage. *Id.*

5

### c. The Amount and Substantiality of the Portion Used.

Atari cannot plausibly allege the Video uses a "quantitatively or qualitatively significant part of [any] original" copyrighted work. Mot. at 12-13 (quoting *Bell*, 27 F.4th at 325). All Atari alleges is that Defendants used a partially obstructed image of the Wrap. *Id.* at 13. But there is no standalone registered copyright for the Wrap, as far as Defendants can tell. The Wrap graphics may—or may not—be included in the alleged Registrations; it is impossible to say based on Atari's allegations. *See* § II.A. But even if they are, they also include substantial additional content, such as computer files for an entire video game. Mot. at 13; Compl., Ex. 1. A single image cannot be a "significant part" of the entirety of *Crystal Castles*.

Atari responds by confusing the third fair-use factor with *de minimis* use. Opp. at 15. But fair use is concerned with how much of Atari's "original work" is used in the Video, not the duration of the use. Mot. at 12-13. Atari then hyperbolizes yet again, claiming the Wrap's geometric pattern is the "heart" of its "IP." Opp. at 16. Having refused to state what its "IP" actually is, Atari's claim is not credible. It cannot be that the Wrap geometry is the "heart" of an entire video game or of a software code printout.

### d. The Effect on the Market for Atari's Copyright.

The Complaint contains no plausible allegations supporting Atari on the fourth—and "most important"—fair-use factor, the effect on the "market for and value of the copyrighted work." Mot. at 13 (quoting *Bell*, 27 F.4th at 324). Atari does not allege the Video is a market substitute for any of its registered works—or even that there is a market for the Wrap graphics in the first place. Nor does it allege facts showing lost revenue due to the Video. *Id.* at 14.

Atari effectively concedes that there is no licensing market for the Wrap (or even the *Crystal Castles* game), claiming that "the market in question" is for broad "licensing opportunities belonging to Atari as the owner of a large portfolio of valuable intellectual property." Opp. at 16.

6

But there is no law tying the fourth-factor analysis to the number of copyrights a plaintiff owns, and Atari offers no authority for the novel proposition that the relevant market includes licensing opportunities for *unrelated* copyrighted works. *See id.* The fourth factor only looks to the "'potential market' *for the original work and any derivatives*." *Bell*, 27 F.4th at 324 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)) (emphasis added).[4] And Atari must allege more than a "theoretical market for licensing" that particular content, which it has not done. *Id.* at 325.

Atari concludes by hyperbolizing yet again, claiming that the Video somehow "destroyed Atari's ability to license the Crystal Castles [IP] for use in future advertising." Opp. at 18. But whether a small collection of Atari fans did not like the Video says nothing about a future licensing market. The Complaint contains no plausible factual allegation that Defendants' fleeting four-second use of the Wrap graphics in the Video impacted the market for anything.

### B. Atari Fails to State a Claim for Unjust Enrichment.

Unjust enrichment fails because (1) it is not an independent cause of action; (2) equitable restitution is not available; and (3) Atari has an adequate remedy at law. Mot. at 15-16.

*First*, Atari disputes the status of unjust enrichment in Texas. Opp. at 19-20. But *this Court* has repeatedly held unjust enrichment is "not an independent cause of action." Mot. at 15 (citing cases). The Court should reject Atari's invitation to construe its claim as one for "money had and received," *see* Opp. at 20 n.5, as Atari does not allege it gave Defendants any money.

*Second*, because Atari admits seeking *damages* for copyright infringement the only potential unjust enrichment remedy—"equitable restitution"—is not available. *See* Opp. at 20.

---

[4] Atari cites *Campbell* for the proposition that the fourth-factor analysis considers the licensing market for its entire IP portfolio. Opp. at 17. But *Campbell* plainly says that the relevant market is only the licensing market "for the original" work. 510 U.S. at 590. The only "original" works potentially at issue in this case are three *Crystal Castles* Registrations.

***Third***, Atari claims it "lacks an adequate remedy at law where there is no contract" between the parties. Opp. at 21. But Atari has legal claims—including for copyright infringement—which provide the exact damages sought through this equitable claim. Mot. at 16.

### C.  Atari Fails to State a Claim for Business Disparagement.

Atari's business disparagement claim fails because it does not allege (1) any false or disparaging statement about Atari; (2) malice; or (3) special damages. Mot. at 16-20.

***First***, the parties agree that because there was no verbal statement about Atari or its products, Atari's claim is about "defamation by implication." Mot. at 17-18; Opp. at 21-22. This means Atari's claimed meaning must be "objectively reasonable." Mot. at 17-18. Defendants showed there is no "objectively reasonable" disparagement, both because (a) the Video made no direct reference to Atari or *Crystal Castles*, and (b) the Video is only a humorous, non-factual commentary about the effects of time on technology. *Id.* Atari ***does not respond*** to this argument, instead arguing that because some online fans did not like the Video, there is actionable disparagement.[5] Opp. at 21-22. Whether Atari or its fans were offended by the Video is not the test for business disparagement.

***Second***, Atari fails to allege malice, i.e., Defendants' actual knowledge of falsity or reckless disregard for truth, both because (a) there was no underlying statement about Atari, and (b) the Complaint alleges nothing more than inactionable negligent inclusion of a portion of the Wrap in the Video. Mot. at 18-19. The Opposition cites no allegations supporting Defendants' knowledge or recklessness, instead making the novel legal argument that copyright infringement in an advertisement automatically constitutes malice. Opp. at 22-23. Atari then suggests that

---

[5] Instead of addressing Defendants' arguments under the "objectively reasonable" standard, Atari devotes a full page to arguing that non-verbal communications can be disparaging. Opp. at 21-22. Defendants never argued otherwise in the Motion. *See* Mot. at 17-18.

8

Defendants' should have performed an investigation on the specific piece of equipment used in the Video. *Id.* Atari cannot possibly contend this particular video game box is the only piece of four-decade-old video technology that works perfectly in perpetuity.

***Third***, Atari concedes it has no special damages; i.e., that the supposed disparagement ***caused*** "pecuniary loss that has been realized or liquidated as in the case of specific lost sales." Mot. at 19-20 (citing cases). Courts routinely dismiss disparagement claims, like Atari's, based on conclusory allegations of reputational damage. Defendants cited eight cases on this subject. Atari ignores all of them, and offers no contrary authority. *See* Opp. at 23-24. Instead, Atari doubles down on exactly what the cases reject—generalized allegations of reputational harm and undefined lost business opportunities, without any facts supporting causation. Opp. at 23.[6]

### D.    Atari Fails to State a Claim for Unfair Competition.

Atari's unfair competition claim fails because (1) the predicate business disparagement claim fails, and (2) Atari does not allege Defendants' interfered with Atari's ability to conduct its business. Mot. at 20-21; *see* § II.C, *supra*. Atari responds with a conclusory allegation that it lost "goodwill," based on the same collection of random internet fan comments.

But Atari never explains how online commentary—particularly commentary directed ***at State Farm***—interfered with the conduct of ***Atari's*** business. Atari's case—*Spear Mktg., Inc. v. BancorpSouth Bank*, 2013 WL 3297593, *11 (N.D. Tex. 2013)—found interference based on intentional misappropriation of trade secrets to "destroy" the plaintiff and "drive [it] out of business," not just lost goodwill. Actual business interference is necessary. *See, e.g.*, *Centennial Bank v. Holmes*, --- F. Supp. 3d ---, 2024 WL 733649, * (N.D. Tex. 2024) (actionable interference

---

[6] Whether Defendants obtained a license from Atari is irrelevant, Opp. at 23-24, because the question is whether Defendants "induc[ed] ***third parties*** not to deal with" Atari. *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 398 (W.D. Tex. 2023) (emphasis added). The content of the Video—disparaging or not—has no causal relationship with an upstream licensing decision.

9

included disruption of specific business relationships and "the deletions of customer and loan information … interfering with [plaintiff's] ability to conduct business with its customers). Atari provides no legal authority for the novel proposition that copyright infringement automatically constitutes unfair competition, where it alleges no actual disruption to its business operations, nor any specific lost opportunities.

### E. Atari Fails to State a Claim for False Information and Advertising.

Insurance Code § 541.052 does not apply to this case because Defendants made no alleged false or misleading claim "regarding the business of insurance or a person in the conduct of the person's insurance business." Mot. at 21. Atari does not contend it is in the "insurance business," but argues Section 541.052 nevertheless applies because the Video generally advertises an insurance company. Opp. at 24. But the Video contains no alleged statements ***about the insurance business***, as the statute requires; it is an advertisement ***for*** an insurance business. Citing no authority, Atari asks the Court to expand Section 541.052 to cover ***any*** statement or conduct by an insurance company, even if not about the "business of insurance."

Atari's claim under this statute fails for the independent reasons that Defendants published no alleged "untrue, deceptive, or misleading statement about Atari," or otherwise misleadingly conveyed Atari's affiliation with the Video. Mot. at 21-22. Atari cites the supposed "disparaging assertions," Opp. at 25, but Section 541.052 does not prohibit disparagement (and there was none, *see* Section II.C). Atari is left arguing the Video's alleged "implicit … affiliation" between State Farm and Atari amounts to an actionable misrepresentation. *Id.* Atari essentially argues, again citing no authority, that any copyright infringement by an insurance company automatically triggers Section 541.052.

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: August 6, 2024

By: */s/ Marc A. Fuller*
    Marc A. Fuller

JACKSON WALKER LLP

Marc A. Fuller
Texas Bar No. 24032210
mfuller@jw.com
Emily Carlton
Texas Bar No. 24110812
ecarlton@jw.com
2323 Ross Ave., Ste. 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

DAVIS WRIGHT TREMAINE LLP

Nicolas A. Jampol (*pro hac vice*)
Samuel Turner (*pro hac vice*)
865 S. Figueroa St., 24th Floor
Los Angeles, CA 90017
Tel: (202) 973-4258
nicolasjampol@dwt.com
samturner@dwt.com

Jake Freed (*pro hac vice*)
50 California Street, Suite 2300
San Francisco, CA 94111
Tel: (415) 276-6532
JakeFreed@dwt.com

*Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

      This is to certify that on August 6, 2024, a true and correct copy of the above document was served via the ECF fling system to all counsel of record.

                                        */s/ Marc A. Fuller*
                                        Marc A. Fuller