IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATARI INTERACTIVE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0704-D |
| | § | |
| STATE FARM MUTUAL | § | |
| AUTOMOBILE INSURANCE | § | |
| COMPANY, THE MARKETING | § | |
| ARM, INC., and AUGUST PASK | § | |
| PARTNERS LLC d/b/a HUDSON | § | |
| EDITORIAL, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Atari Interactive, Inc. ("Atari") alleging claims for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, unjust enrichment, business disparagement, unfair competition, and false information and advertising under Tex. Ins. Code Ann. § 541.052 (West 2023), defendants State Farm Mutual Automobile Insurance Company ("State Farm"), the Marketing Arm, Inc. ("TMA"), and August Pask Partners LLC, d/b/a Hudson Editorial ("Hudson") move to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the court grants the motion in part and denies it in part, dismissing all of Atari's claims except its copyright infringement claim.

I

Atari is the owner of exclusive rights to copyrighted works associated with the Crystal Castles videogame. State Farm, in collaboration with its production and marketing partners,

Hudson and TMA, respectively, introduced an advertising campaign called the "Gamerhood" campaign. As part of this campaign, defendants published a 6-second video advertisement that featured actors standing in front of, and interacting with, an arcade-game cabinet. Atari alleges that the video includes the Crystal Castles arcade cabinet wrap, albeit with the name replaced with "Witch's Broom," and Crystal Castles' characters and scenes depicted on the cabinet, which Atari alleges are covered by its copyright registrations; that defendants were unjustly enriched by their unauthorized use of Atari's intellectual property; that the video included false and disparaging statements about Atari that harmed its business and constituted an unfair business practice; and that State Farm's advertisement contained false information about Atari and its products.

Defendants move under Rule 12(b)(6) to dismiss Atari's complaint for failure to state a claim on which relief can be granted. The court is deciding the motion on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (brackets omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). In other words, the movant is not entitled to dismissal under Rule 12(b)(6) based on an affirmative defense unless the nonmovant has "pleaded [its]self out of court by admitting to all of the elements of the defense." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson*, 2011 WL 4100958, at *3). "In the copyright realm, fair use is an affirmative defense that can support Rule 12(b)(6) dismissal." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022).

III

The court begins with defendants' contention that Atari has failed to state a claim for copyright infringement under 17 U.S.C. § 101 *et seq.*

A

Defendants maintain that Atari has failed to state a plausible claim for copyright infringement because it has failed to allege the elements of such a claim. To state a claim for copyright infringement, a plaintiff must allege "ownership of a valid copyright and copying of the constituent elements of the work that are copyrightable." *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 407 (5th Cir. 2004) (quoting *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1999))).

B

Atari alleges both ownership of a valid copyright and copying of the constituent elements. First, Atari alleges that it "owns exclusive rights to copyright works associated with Crystal Castles. . . . Those works include the Crystal Castles cabinet 'wrap,' the underlying software and cassette tapes associated with the Crystal Castles game, and the artistic depictions of the characters therein (such as Bentley Bear)." Compl. ¶ 2. The complaint also includes photographs of the "cabinet 'wrap'" and artistic depictions of the Bentley Bear character. Compl. ¶ 22. This is sufficient for Atari to plausibly allege that it owns a valid copyright covering these materials.

Second, as for copying of the constituent elements, Atari alleges that "[t]he center of

nearly every video frame prominently features the Crystal Castles arcade cabinet, with Crystal Castle[s] characters and scenes showcased across the front and side of the six-foot tall cabinet." Compl. ¶ 31. By identifying the constituent elements of the copyrighted material—the arcade cabinet wrap and the characters and scenes from the video game—and alleging that these elements appear in the allegedly infringing video, Atari plausibly pleads the elements of copyright infringement.

C

Defendants contend that their use of the cabinet wrap is *de minimis* and, consequently, that there was no actionable copying.

1

"The *de minimis* doctrine provides that if unauthorized copying is sufficiently trivial, 'the law will not impose legal consequences.'" *Straus v. DVC Worldwide, Inc.*, 484 F.Supp.2d 620, 639 (S.D. Tex 2007) (Rosenthal, J.) (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172-73 (2d Cir. 2001)). To determine whether use of copyrighted material is *de minimis*, courts look to whether the copying is "quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred." *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997). In cases involving visual works, courts note that "the quantitative component . . . also concerns the observability of the copied work—the length of time the copied work is observable in the allegedly infringing work and such factors as focus, lighting, camera angles, and prominence." *Id.* (holding that the painting component of a poster shown in an episode of a television show was

"recognizable as a painting, and with sufficient observable detail for the 'average lay observer'" to "discern African-Americans in Ringgold's colorful, virtually two-dimensional style" and thus "[t]he *de minimis* threshold for actionable copying of protected expression ha[d] been crossed").

2

Atari alleges that "the center of nearly every video frame prominently features the Crystal Castles arcade cabinet, with Crystal Castle[s] characters and scenes showcased across the front and side of the six-foot tall cabinet." Compl. ¶ 31. The complaint also includes a still image captured from the video showing the characters in the video interacting with the cabinet in question, which appears in focus in the center of the shot. This case is distinguishable from the ones that defendants cite, in which courts relied on the *de minimis* doctrine to grant motions to dismiss.

For example, in *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F.Supp.2d 625 (S.D.N.Y. 2008), in determining that the appearance of a pinball machine was *de minimis*, the court stressed:

> the pinball machine is always in the background; it is never seen in the foreground. It never appears by itself or in a close-up. It is never mentioned and plays no role in the plot. It is almost always partially obscured . . . . The Designs . . . are never fully visible and are either out of focus or obscured. Indeed, an average observer would not recognize the Designs as anything other than generic designs in a pinball machine.

*Id.* at 632-33 (ellipses added).

Similarly, in *LMNOPI v. XYZ Films, LLC*, 449 F.Supp.3d 86 (E.D.N.Y. 2020), in

- 6 -

concluding that the use of a mural was *de minimis*, the court noted that

> [d]uring its brief cameo, the Mural appears one time for a total of approximately three-and-a-half seconds of a film that runs 93 minutes. The Mural is at all times in the background. Obscuring the view of at least one-third of the Mural rests a red pickup truck. . . . [T]he focus of the scene in which the Mural appears is undeniably a female actress–not the mural. The Mural is never referenced in the Film and is completely irrelevant to the Film's plot.

*Id.* at 91-92 (ellipses added).

In the video at issue here, by contrast, the arcade cabinet appears in the center of the video for the majority of the length of the video. Although the characters in the scene do partially obscure the designs, and the marquee is replaced with a different title, the images on the cabinet are still largely observable and in focus, and the characters are shown interacting with the cabinet such that it is appears to be a central part of the plot. Further, Atari alleges, and provides factual support for the allegation, that observers identified the cabinet wrap as the Crystal Castles wrap, even with the changed marquee. Compl. ¶ 37. This is sufficient to plausibly allege that the copying was more than *de minimis*.

D

Defendants also maintain that Atari has failed to plausibly allege a copyright infringement claim because the use of the cabinet wrap constitutes fair use under 17 U.S.C. § 107.

1

Fair use is an affirmative defense that can support Rule 12(b)(6) dismissal. *See Bell*,

27 F.4th at 320 . Rule 12(b)(6) dismissal is not appropriate, however, unless the plaintiff has "pleaded [it]self out of court by admitting to all of the elements of the defense." *Cochran*, 2011 WL 5604024, at *1 (quoting *Sivertson*, 2011 WL 4100958, at *3). The Copyright Act of 1976 lists four factors that courts are to consider in determining whether fair use applies:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Bell*, 27 F.4th at 321 (quoting 17 U.S.C. § 107). These four factors are "not exclusive," and all four "are to be explored, and the results weighed together, in light of the purposes of copyright." *Id.* (first citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985), then citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994)). The fair use defense can be resolved "on the pleadings if the complaint contains 'facts sufficient to evaluate each of the statutory factors.'" *Id.* at 320 (quoting *Harper & Row*, 471 U.S. at 560). Courts most commonly emphasize the first and fourth factors. *Id.* at 321 (citing *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1171 (9th Cir. 2012)). "A fair-use defense can succeed even if one or more factors favor the claimant." *Id.* (citing *Campbell*, 510 U.S. at 578). And "ultimately, courts have 'almost complete discretion in determining whether any given factor is present in any particular case' and whether the totality favors fair use." *Id.*

2

a

With respect to the purpose and character of the use, courts consider "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price," *Harper & Row*, 471 U.S. at 562, "whether the user acted in good faith," and "whether the use is 'transformative,' meaning it 'adds something new' to the copyrighted work." *Bell*, 27 F.4th at 322 (quoting *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021)).

Atari alleges that defendants' use of the arcade cabinet was commercial. The cabinet wrap was used in an advertisement for State Farm, which weighs against fair use. *See Harper & Row*, 471 U.S. at 562. Further, it does not appear from the video that the cabinet wrap is being used for a transformative purpose, such as criticism or commentary, but rather that State Farm is relying on the cabinet wrap to invoke the same aesthetic tones intended to be evoked by the artwork itself. *See Ringgold*, 126 F.3d at 78-79 (determining that the use of a poster to decorate the set of a television episode was "in no sense" transformative and that defendants used the work "for precisely a central purpose for which it was created—to be decorative. . . . Nothing that the defendants have done with the poster 'supplant[s]' the original or 'adds something new.'"). Therefore, viewing the well-pleaded facts in the light most favorable to Atari, this factor weighs against fair use.

b

As for the nature of the copyrighted work, courts consider "whether the work has been appropriated for its 'expressive elements,' rather than to disseminate 'the underlying facts.'"

*Bell*, 27 F.4th at 323 (quoting *Harper & Row*, 471 U.S. at 563-64).  Atari alleges that defendants appropriated the visual elements of the cabinet wrap and the game visuals, which are expressive elements.  This factor also weighs against fair use.

c

Under the factor that considers the amount and substantiality of the portion used in relation to the copyrighted work as a whole, the court considers the amount of the work copied in relation to the original copyrighted work itself.  Courts "consider whether the amount copied is either a quantitatively or qualitatively significant part of the original." *Bell*, 27 F.4th at 324.  "Even a relatively small amount of copying can weigh against fair use if it captures 'the heart' of the work." *Id.* (quoting *Harper & Row*, 471 U.S. at 565).

In the video, it appears that, although defendants covered the marquee with the title of the game, the majority of the balance of the visual art on the cabinet wrap is visible, although partially obscured by the actors in the video.  Atari also alleges that viewers were able to recognize the cabinet wrap as the wrap for Crystal Castles.  Compl. ¶ 37.  Accepting Atari's well-pleaded facts as true, this factor also weighs against fair use.

d

When assessing the effect of the use upon the potential market for, or value of, the copyrighted work, courts "consider actual market harm but, more broadly, whether widespread use of the work in the same infringing fashion 'would result in a substantially adverse impact on the potential market' for the original work and any derivatives." *Bell*, 27 F.4th at 324 (quoting *Campbell*, 510 U.S. at 590).  This fourth factor "is undoubtedly the

single most important element of fair use." *Harper & Row*, 471 U.S. at 566.

Atari alleges that it "has an active licensing business through which Atari has extended its brand into other media, advertising, merchandising, and publishing categories." Compl. ¶ 23. It is therefore plausible that the widespread, unlicensed use of Atari's copyrighted works would impact this alleged licensing business. Consequently, accepting Atari's well-pleaded facts as true, this factor weighs against fair use.

3

Atari has not pleaded itself out of court by admitting to all of the elements of the fair use defense. Accordingly, the court denies defendants' motion to dismiss Atari's copyright claim to the extent based on the affirmative defense of fair use.

IV

The court turns next to defendants' contention that Atari has failed to state a claim for unjust enrichment because unjust enrichment is not an independent cause of action under Texas law.

This court has consistently reaffirmed that "unjust enrichment is not an independent cause of action under Texas law." *Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*, 2021 WL 3492339, at *8 (N.D. Tex. Aug. 9, 2021) (Fitzwater, J.); *see also Taylor v. Trevino*, 2021 WL 347566, at *4 (N.D. Tex. Feb. 2, 2021) (Fitzwater, J.); *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov 27, 2006) (Fitzwater, J.); *Landers v. Landers*, No. 2021 WL 1570011, at *6 (Tex. App. Apr. 22, 2021, no pet.) (mem.

op.) ("[T]his court has held that unjust enrichment is not an independent cause of action.").[1]
Therefore, defendants' motion to dismiss with respect to Atari's unjust enrichment claim is granted.

V

Defendants contend that Atari's business disparagement claim fails because Atari does not allege any false or disparaging statements, defendants' malice, or special damages caused by any such statement.

A

To prevail on a claim for business disparagement, "a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). The information "must be both false and critical of the plaintiff." *AHBP LLC v. Lynd Co.*, 649 F.Supp.3d 371, 397 (W.D. Tex. 2023) (citing *Fluor Enters. Inc., v. Conex Int'l Corp.*, 273 S.W.3d 426, 434 (Tex. App. 2008, pet. denied)). With respect to the malice requirement, "a business disparagement defendant may be held liable 'only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an

---

[1]Although the Fifth Circuit has held that an unjust enrichment claim was not preempted by the Copyright act, *see Digital Drilling Data Sys.,LLC v. Petrolink Servs., Inc.*, 965 F.3d 365 (5th Cir. 2020), the question whether unjust enrichment was a standalone cause of action was not before the court.

- 12 -

unprivileged fashion.'" *Forbes Inc.*, 149 S.W.2d at 170 (emphasis omitted) (quoting *Hurlbut*, 749 S.W.2d at 766).

B

The complaint alleges that "[d]efendants' infringing videos also placed Atari and its works in a bad light, including when the 'Jake from State Farm' character hits the front of the cabinet—right on Atari IP—suggesting falsely and disparagingly to consumers that Atari's cabinets are low-quality, faulty, and/or unreliable." Compl. ¶ 32. Thus Atari plausibly alleges that false and disparaging information was published about Atari's products. The complaint then asserts that "[d]efendants knew what they were doing," Compl. ¶ 33, and that "[d]efendants made these false and disparaging claims concerning Atari intentionally, with malice, and/or with reckless disregard for the falsity of such statements." Compl. ¶ 61. The complaint does not contain any factual allegations that support the assertion that any statements were made with knowledge of their falsity, reckless disregard as to their falsity, or with ill will or an intent to interfere with Atari's business. Atari alleges that "[d]efendants knew what they were doing," but without support for this conclusory assertion. Compl. ¶ 33. Although Atari alleges that State Farm "misappropriated Atari's iconic intellectual property for its own commercial ends" and that it "wanted to take the cultural benefits of Atari's IP without paying for it," Compl. ¶ 33, this does not enable the court to draw the reasonable inference that Atari was acting in bad faith or with the intent to interfere with Atari's business by publishing false information about Atari. Therefore, Atari has failed to plausibly plead the required malice element of its business disparagement

- 13 -

claim.

C

Atari also fails to allege facts that enable the court to draw the reasonable inference that it suffered special damages. To prove the special damages component of a business disparagement claim, a plaintiff "must provide evidence 'that the disparaging communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings.'" *Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F.Supp.2d 938, 959 (E.D. Tex. 2011) (quoting *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 628 (Tex. App. 2007, pet. denied)) (finding that conclusory statements regarding lost profits and lost business, "void of any supporting facts, [are] insufficient to support a claim for business disparagement"). At the pleading stage, Atari must allege sufficient facts for the court to draw the reasonable inference that this requirement is met. Atari pleads that it has suffered damages "including, but not limited to, lost profits and lost revenues, lost customers, and loss of business, goodwill, and reputation among existing and prospective customers." Compl. ¶ 62. Atari asserts that certain individuals expressed their dissatisfaction with State Farm's use of the Atari cabinet, but these statements do not indicate that the cited critics had any dissatisfaction with Atari or that Atari has lost any customers, profits, revenues, business, or goodwill as a result of disparaging statements in the video.[2]

---

[2]Atari asserts that the appearance of an association between Atari and State Farm means that negative reactions directed toward State Farm were also directed toward Atari.

D

Because Atari has not plausibly alleged that State Farm published false or disparaging information about it with malice, or that Atari suffered special damages as a result, defendants' motion to dismiss the business disparagement claim is granted.

VI

Defendants maintain that Atari's unfair competition claim should be dismissed because the predicate violation—the business disparagement claim—is implausible and because Atari did not allege that the video impacted Atari's business.

"The tort called 'unfair competition' consisting of 'conduct that is contrary to honest practice in industrial or commercial matters' is a derivative tort requiring 'a viable underlying tort or other illegal conduct for liability to exist.'" *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 286-87 (Tex. App. 2021, pet. denied) (citing *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 788 (Tex. App. 2015, no pet.)).  As discussed *supra* in § V, Atari has not plausibly alleged a claim for business disparagement.  Also as discussed above, Atari's assertion that the alleged disparagement caused Atari to suffer damages "including, but not limited to, lost profits and lost revenues, lost customers, and loss of business, goodwill, and reputation among existing and prospective customers," Compl. ¶ 67, is conclusory.  For this reason, defendants' motion to dismiss Atari's unfair competition claim is granted.

---

But even if this is the case, the injury to Atari would have been caused by the apparent association rather than the alleged false and disparaging statement.

VII

Defendants contend that Atari's claim under Tex. Ins. Code Ann. § 541.052 (West 2023) fails because the statute does not apply to the facts of this case.

Section 541.052 provides, in relevant part:

> (a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to make, publish, disseminate, circulate, or place before the public . . . an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business.

Because Atari does not plausibly allege that an untrue, deceptive, or misleading assertion was made *regarding the business of insurance or a person in the conduct of the person's insurance business*, the court grants defendants' motion to dismiss Atari's claim under this statute.

\* \* \*

For the reasons explained, the court denies defendants' motion to dismiss with respect to the copyright infringement claim and grants the motion with respect to the claims for unjust enrichment, business disparagement, unfair competition, and false information and advertising under Tex. Ins. Code Ann. § 541.052.

**SO ORDERED**.

September 27, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE